UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN J. SKLAR (as IRA Account Beneficiary), on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>BANK OF AMERICA CORP., KENNETH D. LEWIS, JOHN A. THAIN, GARY A. CARLIN and NELSON CHAI,<br><br>      Defendants. | **Electronically Filed**<br>Relates to securities class actions<br><br>Case No. 09 Civ. 0580 (DC) |

[Additional captions on following pages]

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE PUBLIC PENSION FUNDS FOR: (1) APPOINTMENT AS LEAD PLAINTIFF; (2) APPROVAL OF THEIR CHOICE OF LEAD COUNSEL; AND (3) CONSOLIDATION OF ALL RELATED SECURITIES CLASS ACTIONS**

| | |
|---|---|
| FINGER INTERESTS NUMBER ONE LTD, on behalf of himself and all others similarly situated, | Case No. 09 Civ. 0606 (DC) |
| Plaintiff, | |
| v. | |
| BANK OF AMERICA CORPORATION, KENNETH D. LEWIS, JOHN A. THAIN, WILLIAM BARNET, III, FRANK P. BRAMBLE, SR., JOHN T. COLLINS, GARY L. COUNTRYMAN, TOMMY R. FRANKS, CHARLES K. GIFFORD, MONICA C. LOZANO, WALTER E. MASSEY, THOMAS J. MAY, PATRICIA E. MITCHELL, THOMAS M. RYAN, O. TEMPLE SLOAN, JR., ROBERT L. TILLMAN, JACKIE M. WARD, CAROL T. CHRIST, ARMANDO M. CODINA, JUDITH MAYHEW, VIRGIS W. COLBERT, ALBERTO CRIBIORE, AULANA L. PETERS, CHARLES O. ROSSOTTI, JOHN D. FINNEGAN, JOSEPH W. PRUEHER, ANN N. REESE, | |
| Defendants. | |
| FORTH WORTH EMPLOYEES' RETIREMENT FUND and CITY OF MIAMI GENERAL EMPLOYEES' RETIREMENT TRUST, on behalf of themselves and all similarly situated investors, | Case No. 09 Civ. 0638 (DC) |
| Plaintiff, | |
| v. | |
| BANK OF AMERICA CORPORATION, KENNETH D. LEWIS, and JOHN A. THAIN, | |
| Defendants. | |

AVERS WEXLER, Individually and On
Behalf of All Others Similarly Situated,

                Plaintiff,

     v.

BANK OF AMERICA CORP., KENNETH D.
LEWIS., O. TEMPLE SLOAN, JR.,
WILLIAM BARNETT, III, FRANK P.
BRAMBLE, SR., JOHN T. COLLINS, GARY
L. COUNTRYMAN, TOMMY R. FRANKS,
CHARLES K. GIFFORD, MONICA C.
LOZANO, WALTER E. MASSEY, THOMAS
J. MAY, PATRICIA E. MITCHELL, THMAS
M.RYAN, MEREDITH R. SPANGLER,
ROBERT L. TILLMAN, and JACKIE M.
WARD,

                Defendants.

Case No. 09 Civ 0720 (GBD)

---

FRANK PALUMBO and JENNIFER
PALUMBO as JTWROS and BRAD
McMORRIS,

                Plaintiffs,

     v.

BANK OF AMERICA CORPORATION,
KENNETH D. LEWIS, and JOHN A. THAIN,

                Defendants.

Case No. 09 Civ 0740 (DC)

---

CHARLES ZITNER, On Behalf of Himself
and All Others Similarly Situated,

                Plaintiffs,

     v.

BANK OF AMERICA CORPORATION,
KENNETH D. LEWIS, JOE L. PRICE, and
JONATHAN ALEXANDER THAIN,

                Defendants.

Case No. 09 Civ 0881 (DC)

| | |
|---|---|
| FRED STABBERT and SHIRLEY STABBERT, Individually and on behalf of all others similarly situated, | Case No. 09 Civ. 0928 (DC) |
| Plaintiffs, | |
| v. | |
| BANK OF AMERICA CORPORATION, KENNETH D. LEWIS, JOHN A. THAIN, GARY A. CARLIN, and NELSON CHAI, | |
| Defendants. | |
| GARY WELIKSON, on behalf of himself and all others similarly situated, | Case No. 09 Civ. 1463 (DC) |
| Plaintiff, | |
| v. | |
| BANK OF AMERICA CORPORATION, KENNETH D. LEWIS, and JOHN A. THAIN, | |
| Defendants. | |

WEST PALM BEACH FIREFIGHTERS'
PENSION FUND, Individually and On Behalf
of All Others Similarly Situated,

Case No. 09 Civ. 1612 (DC)

                    Plaintiff,

       v.

BANK OF AMERICA CORPORATION,
KENNETH D. LEWIS, JOE L. PRICE,
JONATHAN ALEXANDER THAIN, NEIL
A. COTTY, WILLIAM BARNETT, III,
FRANK P. BRAMBLE, SR., JOHN T.
COLLINS, TOMMY R. FRANKS, GARY L.
COUNTRYMAN, CHARLES K. GIFFORD,
WALTER E. MASSEY, THOMAS J. MAY,
PATRICIA E. MITCHELL, THOMAS M.
RYAN, O. TEMPLE SLOAN, JR.,
MEREDITH R. SPANGLER, ROBERT L.
TILLMAN, JACKIE M. WARD, BANC OF
AMERICA SECURITIES LLC and MERRILL
LYNCH, PIERCE, FENNER & SMITH
INCORPORATED,

                    Defendants.

ELLEN K. FAUERBACH, Individually and on
behalf of herself and all others similarly
situated,

Case No. 09 Civ. 1941 (PKC)

                    Plaintiff,

       v.

BANK OF AMERICA CORP., KENNETH D.
LEWIS, JOHN A. THAIN, GARY A.
CARLIN, and NELSON CHAI,

                    Defendants.

NAOMI RAPHAEL, on behalf of herself and
all others similarly situated,

                Plaintiff,

     v.

BANK OF AMERICA CORPORATION,
KENNETH D. LEWIS, and JOHN A. THAIN,

                Defendants.

Case No. 09 Civ. 2350

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ............................................................................................................. 1

II.  STATEMENT OF THE FACTS ..................................................................................... 4

III. PROCEDURAL BACKGROUND ................................................................................. 7

IV.  ARGUMENT .................................................................................................................. 9

    A.   The Public Pension Funds Should Be Appointed Lead Plaintiff ........................ 9

       1.   The Public Pension Funds Have the Largest Financial Interest in the Relief Sought by the Class ................................................................................ 10

       2.   The Public Pension Funds Are an Appropriate Lead Plaintiff Group ........... 12

       3.   The Public Pension Funds Are Sophisticated Institutional Investors that Satisfy the Requirements of Rule 23 ............................................................. 14

          a.   The Claims of the Public Pension Funds Are Typical of the Claims of the Class ........................................................................................ 15

          b.   The Public Pension Funds Will Fairly and Adequately Represent the Interests of the Class ............................................................................ 16

          c.   The Public Pension Funds Are the Prototypical Lead Plaintiff Envisioned by the PSLRA ..................................................................................... 17

    B.   This Court Should Approve the Public Pension Funds' Choice of Lead Counsel ............................................................................................................. 19

    C.   This Court Should Consolidate the Related Actions ......................................... 20

V.   CONCLUSION ............................................................................................................. 22

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Albert Fadem Trust v. Citigroup, Inc.*,
  239 F. Supp. 2d 344 (S.D.N.Y. 2002) ........................................................................10, 14, 20

*City of Brockton Ret. Sys. v. Shaw Group, Inc.*,
  No. 06 Civ. 8245(CM)(MHD), 2007 WL 2845125 (S.D.N.Y. Sept. 26, 2007)........................12

*Corwin v. Seizinger*,
  No. 07-cv-6728, 2008 WL 123846 (S.D.N.Y. Jan. 8, 2008).....................................................10

*Ferrari v. Impath, Inc.*,
  No. 03-cv-5667, 2004 WL 1637053 (S.D.N.Y. July 20, 2004) ................................................18

*Glauser v. EVCI Center Colleges Holding Corp.*,
  236 F.R.D. 184 (S.D.N.Y. 2006)................................................................................................10

*Hevesi v. Citigroup Inc.*,
  366 F.3d 70 (2d Cir. 2004) ........................................................................................................18

*In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*,
  08 MDL No. 1963, 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009) ..................................................15

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ......................................................................................................17

*In re Drexel Burnham Lambert Group*,
  960 F.2d 285 (2d Cir. 1992), *cert. dismissed sub nom.*, 506 U.S. 1088 (1993) ........................15

*In re eSpeed, Inc. Sec. Litig.*,
  232 F.R.D. 95 (S.D.N.Y. 2005)...........................................................................................11, 14

*In re Fannie Mae Sec. Litig.*,
  355 F. Supp. 2d 261 (D.D.C. 2005)...........................................................................................17

*In re McDermott Intern., Inc. Sec. Litig.*,
  No. 08 Civ. 9943, 2009 WL 579502 (S.D.N.Y. Mar. 6, 2009) ...........................................12, 13

*In re Nature's Sunshine Prods., Inc.*,
  No. 2:06-CV-267 TS, 2006 WL 2380965 (D. Utah Aug. 16, 2006)........................................13

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998)......................................................................................14, 20

*In re Waste Mgmt, Inc. Sec. Litig.*,
   128 F. Supp. 2d 401 (S.D. Tex. 2000)..................................................................................8

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990) ...........................................................................................20

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007)..............................................................................8, 14, 16

*Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.*,
   No. 00-3605, 2000 WL 33173017 (D.N.J. Nov. 16, 2000)...............................................13

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004)......................................................................................15

*Reimer v. Ambac Fin. Group, Inc.*,
   Nos. 08 Civ. 411 et al., 2008 WL 2073931 (S.D.N.Y. May 9, 2008) .......................13

*Varghese v. China Shenghuo Pharmaceutical Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008) ........................................................................12, 13

*Xianglin Shi v. Sina Corp.*,
   No. 05 Civ. 2154, 2005 WL 1561438 (S.D.N.Y. July 1, 2005) .................................17

*Zucker v. Zoran Corp.*,
   No. 06-cv-4843 (WHA), 2006 WL 3591156 (N.D. Cal. Dec. 11, 2006)...................11

**Statutes**

15 U.S.C. § 77z-1(a)(3)(B)........................................................................................................1

15 U.S.C. § 78u-4(a)(3)(A)(i)...................................................................................................9

15 U.S.C. § 78u-4(a)(3)(B).................................................................................................1, 20

15 U.S.C. § 78u-4(a)(3)(B)(i)...............................................................................................2, 9

15 U.S.C. § 78u-4(a)(3)(B)(iii)................................................................................................10

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)........................................................................................3, 10

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ................................................................................14, 16

15 U.S.C. § 78u-4(a)(3)(B)(v)................................................................................................19

**Other Authorities**

H.R. Conf. Rpt. No. 104-369,
  104th Cong. 1st Sess (Nov. 28, 1995) .......................................................................................19

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................................14

Fed. R. Civ. P. 42(a) ............................................................................................................20

iv

## I.    INTRODUCTION

The State Teachers Retirement System of Ohio ("STRS Ohio"), the Ohio Public Employees Retirement System ("OPERS"), the Teachers Retirement System of Texas ("Texas TRS"), Stichting Pensioenfonds Zorg en Welzijn, duly represented by PGGM Vermogensbeheer B.V. ("PGGM"), and Fjärde AP-Fonden ("AP4") (collectively, the "Public Pension Funds") respectfully submit this memorandum in support of their motion pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), and Section 27(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and this Court's Order dated February 25, 2009, for an Order: (a) appointing the Public Pension Funds as Lead Plaintiff; (b) approving the Public Pension Funds' selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz"), Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") and Barroway Topaz Kessler Meltzer & Check LLP ("Barroway Topaz") as Lead Counsel; and (c) consolidating all related securities class actions.[1]

The underlying litigations are securities class actions that arise from Bank of America Corporation's ("Bank of America" or the "Company") acquisition of Merrill Lynch & Co., Inc. ("Merrill Lynch") (hereinafter referred to as the "Acquisition"). The Related Actions assert claims under Sections 10(b), 14(a), and 20(a) of the Exchange Act and Sections 11, 12(a)(2) and 15 of the Securities Act. Those claims are based on the allegations that Bank of America, its

---

[1]    The Related Actions (as defined below) assert claims based on both the Securities Act and the Exchange Act, which contain identical provisions concerning the PSLRA. For the purposes of this memorandum of law, the PSLRA provisions contained in the Securities Exchange Act are cited and citations to the Securities Act are omitted as they are redundant. Moreover, the Related Actions assert claims over various class periods. For purposes of this motion, the Public Pension Funds have used the longest pleaded class period (July 21, 2008 to January 20, 2009 (hereafter, the "Class Period")) to calculate their financial interest.

directors and executives, along with former executives of Merrill Lynch, made material misrepresentations and omitted to state material facts relating to the Acquisition – including the due diligence conducted by the Company, the financial condition of Merrill Lynch, the strength of the combined company and the benefits flowing to Bank of America shareholders by approving a merger with Merrill Lynch. The defendants also misrepresented Bank of America's financial condition during the Class Period. Those misrepresentations inflated the price of Bank of America's stock, led investors to overwhelmingly follow management's recommendation and approve a merger with Merrill Lynch and facilitated a new offering of $10 billion of Company stock, which was conducted pursuant to materially false proxy and registration statements.

Just days after the Acquisition closed, it was revealed that Merrill Lynch incurred losses of over $15 billion during the fourth quarter of 2008, and that the Company had secretly demanded billions of dollars in governmental assistance and assurances to backstop losses on more than $100 billion in toxic assets to complete the Acquisition. Subsequent disclosures made clear that Bank of America executives were fully aware of Merrill Lynch's critical financial condition during the Class Period, and knew before the shareholder vote on the Acquisition that Merrill Lynch faced billions of dollars in losses. These disclosures caused the price of the Company's securities to collapse, wiping out billions of dollars of market capitalization, with Bank of America common stock falling below $5 per share after having traded above $30 per share prior to the Acquisition.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the class in this litigation and also makes a *prima facie* showing that it is an adequate class representative under Rule 23 of

the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The Public Pension Funds respectfully submit that they are the "most adequate plaintiff" to represent the class of investors in Bank of America securities by virtue of the massive loss they suffered from their investments in Bank of America as a result of Defendants' misconduct. Specifically, the Public Pension Funds incurred a loss of $273,501,188 from their transactions in Bank of America securities during the Class Period.[2] In addition, the Public Pension Funds held 34,396,247 shares of Bank of America stock on October 10, 2008, the record date for the shareholder vote on the Acquisition, and increased their holdings to 39,197,572 shares as of the shareholder vote on December 5th. Accordingly, under any measure, the Public Pension Funds have an extremely large financial interest in this litigation – an interest presently believed to be greater than that of any competing movant.

Further, the Public Pension Funds satisfy the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, as their claims are typical of the other members of the class, and they will fairly and adequately represent the class. Indeed, the Public Pension Funds are comprised of several of the largest and most sophisticated public pension funds in the United States and Europe, including two funds, STRS Ohio and OPERS, which are represented by the Ohio Attorney General, Texas TRS, PGGM and AP4, all of which manage billions of dollars in assets. The Public Pension Funds each have a long history as advocates for shareholders' rights and have conferred on multiple occasions demonstrating their ability to jointly prosecute the pending

---

[2]     STRS Ohio, OPERS, Texas TRS, PGGM and AP4 have filed herewith lead plaintiff certifications that, among other things, set forth their transactions in Bank of America securities during the Class Period. *See* Exhibits A, B, C, D and E respectively, to the accompanying Declaration of Frederic S. Fox, dated March 23, 2009 (hereinafter "Fox Decl."). Accompanying charts reflecting the calculations of the losses in Bank of America securities of STRS Ohio, OPERS, Texas TRS, PGGM and AP4 during the Class Period are attached as Exhibits F, G, H, I and J respectively, to the Fox Decl.

litigation.  *See* Joint Declaration of Albert G. Lin, Timothy P. Wei, Femke van't Groenewout, and Agneta Wilhelmson Karemar (the "Joint Declaration") attached as Exhibit L to the Fox Decl.  In addition, the Public Pension Funds have selected and retained Bernstein Litowitz, Kaplan Fox and Barroway Topaz, law firms with substantial experience in prosecuting securities fraud class actions, to serve as Lead Counsel.

Accordingly, the Public Pension Funds respectfully request that the Court appoint them as Lead Plaintiff and otherwise grant their motion.

## II.   STATEMENT OF THE FACTS

Bank of America is a financial holding company and one of the largest financial services companies in the country. It provides a range of banking and nonbanking financial services and products in the United States and internationally.  The crux of the claims in the Related Actions is that Bank of America misled investors concerning the Acquisition by overstating the due diligence conducted by the Company and the financial condition of Merrill Lynch, Bank of America and the combined company.

Prior to the Acquisition, Bank of America touted its strong financial condition and represented that the Company was well positioned and able to absorb losses arising from the current market turmoil impacting other financial giants. On September 15, 2008, with Lehman Brothers on the brink of bankruptcy and analysts questioning the condition of other banks, Bank of America announced that it had agreed to acquire Merrill Lynch in a $50 billion all-stock transaction. The Acquisition valued Merrill Lynch stock at $29 per share – a premium of 70% over its closing price on September 12, 2008 – and provided for an exchange of each Merrill Lynch share for 0.8595 of a share of Bank of America stock.  The Company touted the Acquisition as positive for Bank of America and assured its shareholders that the Company had

conducted adequate due diligence of Merrill Lynch before agreeing to the Acquisition. Bank of America almost immediately placed personnel on the ground at Merrill Lynch, and had daily access to detailed information concerning Merrill Lynch's financial condition.

Because the Acquisition contemplated the issuance of Bank of America shares, the approval of Bank of America shareholders was required. To obtain the required votes, Bank of America issued a joint proxy statement (with Merrill Lynch), filed with the SEC on November 3, 2008 (the "Proxy Statement"), to its shareholders soliciting their approval for the Acquisition and recommending a vote in favor of the transaction. The shareholder vote took place during a special meeting on December 5, 2008. As set forth in the Proxy Statement, all shareholders of Bank of America's common stock and Series B Preferred Stock who held shares on October 10, 2008, the record date set forth in the Proxy Statement, were entitled to vote on the Acquisition. The Proxy Statement included, among other things, financial results for Merrill Lynch and pro forma consolidated financial results for the combined company. Those financial results were also incorporated in the registration statement and prospectus issued in connection with Bank of America's sale of 455 million shares of common stock on October 7, 2008, for proceeds of approximately $10 billion (the "Offering").

Prior to the December 5th shareholder vote on the Acquisition, Bank of America executives learned that Merrill Lynch had incurred billions of dollars in losses during the fourth quarter. Immediately following the shareholder vote, the Company learned that those losses had swelled to nearly $15 billion. Indeed, on December 17, 2008 (merely 12 days after the shareholder vote but before the Acquisition officially closed), Bank of America CEO Ken Lewis met with Ben Bernanke, the Chairman of the Federal Reserve, and Henry Paulson, then Treasury Secretary, and told them that the Company was unlikely to complete the purchase of Merrill

Lynch because of Merrill Lynch's huge losses in the fourth quarter of 2008.  Bernanke and Paulson encouraged Lewis to complete the deal, which Lewis agreed to do on the condition that the government provide support to help the Company digest Merrill Lynch's losses.  Moreover, according to published reports, Bernanke and Paulson urged Lewis to not invoke a material-adverse-change clause in the merger agreement and that terminating the merger "would reflect poorly on the bank and suggest it hadn't done its due diligence and wasn't following through on its commitments."[3]  Neither the fact of this meeting, the Company's reservations about closing the deal, the magnitude of Merrill Lynch's fourth quarter losses, or Bank of America's need for additional government funding were disclosed to investors until mid-January 2009, well after the Acquisition closed.

On January 16, 2009, Bank of America belatedly disclosed Merrill Lynch's preliminary fourth quarter 2008 results, a net loss of $15.31 billion, the Company's own net loss of $1.79 billion for the fourth quarter 2008, and the fact that the Company had received $20 billion in aid from the federal government to complete the Acquisition.  Between January 16 and January 20, 2009, articles in *The New York Times* and *The Wall Street Journal* revealed the nature of Lewis's meeting with Bernanke and Paulson, Bank of America's knowledge of losses at Merrill Lynch, the increasing magnitude of those losses during the fourth quarter of 2008, and that Bank of America considered abandoning the deal before the Acquisition closed.

The price of Bank of America's common stock has declined more than 80% since the Acquisition was announced.  The stock traded as high as $38.13 during the Class Period, and closed at the Class Period low of $5.10 on January 20, 2009.

---

[3]     Dan Fitzpatrick, "Merrill Losses Put Lewis on Hot Seat," *The Wall Street Journal*, Jan. 18, 2009.

## III.   PROCEDURAL BACKGROUND

Presently pending in this District are at least eleven related securities class actions (the "Related Actions") brought pursuant to Sections 10(b), 14(a), and 20(a) of the Exchange Act, Securities and Exchange Commission ("SEC") Rules 10b-5 and 14a-9, and Sections 11, 12(a)(2) and 15 of the Securities Act against Bank of America and other defendants for violations of the federal securities laws.[4]  On January 21, 2009, the first of the Related Actions against Bank of America, styled *Sklar v. Bank of America Corp., et al*, No. 09-cv-00580-DC, was filed in the United States District Court for the Southern District of New York. The *Sklar* complaint sets forth claims for violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 on behalf of all persons who owned shares of Bank of America on October 10, 2008, the record date set forth in the Proxy Statement, who were entitled to vote to approve the Acquisition pursuant to the Proxy Statement. Each of the Related Actions, except one, alleges violations of Section 14(a) of the Exchange Act arising out of the Proxy Statement.

On January 21, 2009, counsel for plaintiff in *Sklar* published a notice to investors in Bank of America's stock as required by the PSLRA (the "Notice"). *See* Fox Decl. Ex. K. The Notice advised investors of the existence of this lawsuit and the nature of defendants' misstatements and omissions in the Proxy Statement. The Notice further advised potential class members of their right to move the Court to be appointed lead plaintiff within 60 days of the publication of the Notice. That deadline is March 23, 2009.

---

[4]     At least one related securities class action has been filed in the Northern District of California. (*Cromier v. Bank of America Corp, et al*, No. CV 09-0544, which was filed on February 6, 2009). If appointed Lead Plaintiff, the Public Pension Funds would seek to have the *Cromier* action transferred to this District for consolidation.

In addition to the Related Actions, actions under the Employee Retirement Income Security Act ("ERISA") and several derivative actions are pending against Bank of America. These actions are factually related, but allege different legal claims. As such, the Public Pension Funds are not seeking to consolidate these actions with the Related Actions.

Following the filing of *Sklar*, additional shareholder class actions were filed in this District that, in addition to the Section 14(a) claims asserted in *Sklar*, asserted claims under Sections 10(b) and 20(a) of the Exchange Act on behalf of purchasers of Bank of America stock. On January 30, 2009, *Zitner v. Bank of America Corp., et al*, No. 09-cv-00881, was filed in the Southern District of New York, on behalf of all persons who purchased or otherwise acquired the common stock of Bank of America between July 21, 2008 and January 20, 2009 and who were damaged thereby – the longest Section 10(b) class period asserted in any of the Related Actions.[5] In addition, on February 20, 2009, *West Palm Beach Firefighters' Pension Fund v. Bank of America Corp., et al*, No. 09-cv-01612, was filed in the Southern District of New York, alleging claims under Sections 11, 12(a)(2) and 15 of the Securities Act on behalf of those persons who purchased or acquired Bank of America stock pursuant to the Offering, in addition to the Exchange Act claims described above. According to the notices published in accordance with the PSLRA by counsel in the Related Actions, the deadline to move for lead plaintiff in the Related Actions is March 23, 2009.[6]

Accordingly, the Related Actions assert the following claims: (1) claims under Section 14(a) of the Exchange Act on behalf of persons who held Bank of America shares on October 10, 2008 and were entitled to participate in the December 5th vote on the Acquisition; (2) claims

---

[5]    The investors ultimately appointed lead plaintiff will have the obligation to determine, based on their investigation, the appropriate class period and particular claims to be asserted in the operative consolidated class action complaint to be filed following appointment by the Court. *See, e.g., Kaplan v. Gelfond*, 240 F.R.D. 88, 92 (S.D.N.Y. 2007) ("[T]he filing of a consolidated complaint, and the determination of class certification each offer opportunities to resolve remaining issues concerning the differing class periods.") (internal citation omitted); *see also In re Waste Mgmt, Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 407 n.1 (S.D. Tex. 2000). For purposes of this motion, the longest publicly-noticed class period applies.

[6]    Some of the notices refer to the deadline as March 22, 2009 – 60 days after the filing of *Sklar* – which is a Sunday. According to Federal Rule of Civil Procedure 6(a), the deadline extends to the next day that the Court is open, which is Monday, March 23, 2009.

under Section 10(b) of the Exchange Act on behalf of persons who purchased or otherwise acquired Bank of America stock between July 21, 2008 and January 20, 2009, and were damaged thereby; and (3) claims under Sections 11 and 12(a)(2) of the Securities Act on behalf of persons who acquired Bank of America stock pursuant to the Offering, and were damaged thereby. The Public Pension Funds now timely move this Court to be appointed as the Lead Plaintiff in the Related Actions.

## IV.    ARGUMENT

### A.    The Public Pension Funds Should Be Appointed Lead Plaintiff

The Public Pension Funds respectfully submit that they should be appointed Lead Plaintiff because they are the movant "most capable of adequately representing the interests of the class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA sets forth the procedure for the selection of lead plaintiff in "each private action arising under [the securities laws] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." Section 21D(a)(3)(A)(i) provides that within twenty days after the date on which a class action is filed:

> the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –
>
> (I)    of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the Court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Further, Section 21D(a)(3)(B) directs the Court to consider any motions by a plaintiff or purported class member to serve as Lead Plaintiff in response to any such notice within ninety days after the date of publication of the notice pursuant to Section 21D(a), or as soon as

practicable after the Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims.

Under these sections of the Exchange Act, the court "shall" adopt a presumption that the most adequate plaintiff is the applicant that:

> (aa)   has either filed the complaint or made a motion in response to a notice...;
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Albert Fadem Trust v. Citigroup, Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002).

Thus, the statutory language explicitly provides that the movant with "the largest financial interest" is entitled to presumptive appointment as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### 1.   The Public Pension Funds Have the Largest Financial Interest in the Relief Sought by the Class

The Public Pension Funds respectfully submit that they have the largest financial interest of any qualified movant in this action and should therefore be appointed Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii). In analyzing financial interest, courts typically consider four factors: (i) the gross number of shares purchased during the class period; (ii) the net number of shares purchased during the class period; (iii) the total net funds expended to acquire those shares; and (iv) the movant's net losses. *See, e.g., Corwin v. Seizinger*, No. 07-cv-6728, 2008 WL 123846, at *2 (S.D.N.Y. Jan. 8, 2008) (Chin, J.); *Glauser v. EVCI Center Colleges Holding Corp.*, 236 F.R.D. 184, 187 (S.D.N.Y. 2006); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100

(S.D.N.Y. 2005). Based on these four factors, the Public Pension Funds believe they have the largest financial interest of any Lead Plaintiff movant.

During the Class Period, the Public Pension Funds purchased 20,734,391.75 shares of Bank of America common stock on a gross basis, and sold 5,683,280.76 shares, and thus had net purchases of 15,051,110.99 shares of common stock. The Public Pension Funds had net expenditures of $259,745,374 on their purchases of common stock. As a result of Bank of America's misconduct the Public Pension Funds sustained losses of approximately $273,501,188 on a first-in, first-out ("FIFO") basis and approximately $222,726,744 on a last-in, first-out ("LIFO") basis for the purpose of the Section 10(b) claims. *See* Fox Decl. Exs. F, G, H, I and J. The magnitude of the Public Pension Funds' collective financial interest is summarized in the following chart:

| | |
|---|---|
| **Gross Purchases** | 20,734,391.75 |
| **Net Purchases** | 15,051,110.99 |
| **Net Expenditures** | $259,745,374 |
| **Approximate FIFO Loss** | $273,501,188 |
| **Approximate LIFO Loss** | $222,726,744 |

The Public Pension Funds' financial interest for the purpose of the Section 14(a) claims should be measured by the number of shares held on the record date for the shareholder vote, as the number of shares held provides a rough approximation of a plaintiff's stake in the overall damage caused by the false statements that procured the shareholder vote, as well as the extent of that investor's participation in the vote. *See, e.g., Zucker v. Zoran Corp.*, No. 06-cv-4843, 2006 WL 3591156, at *3 (N.D. Cal. Dec. 11, 2006) ("This case is somewhat unique under the PSLRA as it alleges only violations of [Sections] 14(a) and 20(a) … [T]he potential recovery increases with the number of shares a plaintiff bought. Thus, the candidate with the largest potential recovery would be the candidate who had bought the largest number of Zoran shares."). The

11

Public Pension Funds owned 34,396,247 shares of Bank of America common stock on the record date, October 10, 2008, which further supports the conclusion that they have the greatest financial interest in this litigation.

Therefore, the Public Pension Funds presently believe that they have the largest financial interest of any Lead Plaintiff movant and are presumptively entitled to appointment as the Lead Plaintiff.

### 2.    The Public Pension Funds Are an Appropriate Lead Plaintiff Group

The express language of the PSLRA permits the appointment of a group of class members as the Lead Plaintiff, as courts in this District have long recognized. *See, e.g., In re McDermott Int'l, Inc. Sec. Litig.*, No. 08 Civ. 9943, 2009 WL 579502, at *2 (S.D.N.Y. Mar. 6, 2009) ("The majority of courts, including those in this District ... permit [ ] unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis, if such a grouping would best serve the class....") (quoting *Varghese v. China Shenghuo Pharmaceutical Holdings, Inc.*, 589 F. Supp. 2d 388, 391-92 (S.D.N.Y. 2008)) (alterations in original); *City of Brockton Ret. Sys. v. The Shaw Group, Inc.*, No. 06 Civ. 8245, 2007 WL 2845125, at *3 (S.D.N.Y. Sept. 26, 2007) (Dollinger, M.J.) ("From this language, it is evident that the court may appoint multiple persons – whether individuals or entities – as lead plaintiffs.").

Courts in this District have identified several elements to be considered in determining whether a given Lead Plaintiff group is acceptable:

> [A] proposed group must proffer an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs. Factors that courts have considered when evaluating whether a group's members will function cohesively and separately from their lawyers include evidence of: (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa.

12

*McDermott*, 2009 WL 579502, at *2 (quoting *Varghese*, 589 F. Supp. 2d at 392).

The Public Pension Funds have satisfied this test. As set forth in the Joint Declaration, Fox Decl. Exhibit L, through a series of conference calls and other communications, representatives of the Public Pension Funds have discussed in detail their decision to act jointly in this case and their plans for joint oversight of the prosecution of the litigation and the supervision of counsel. The Joint Declaration provides further evidence that the Public Pension Funds made the decision to seek appointment as Lead Plaintiff independent of their attorneys, and that they have conferred to discuss plans for the cooperative prosecution of this highly complex securities class action.   Such a declaration and intra-group discussions are widely accepted as adequate evidence in support of a Lead Plaintiff group.  *See Varghese*, 589 F. Supp. 2d at 392 (citing *Reimer v. Ambac Fin. Group, Inc.*, Nos. 08 Civ. 411 et al., 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008)); *In re Nature's Sunshine Prods., Inc.*, No. 2:06-CV-267 TS, 2006 WL 2380965, at *1 (D. Utah Aug. 16, 2006); *Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.*, No. 00-3605, 2000 WL 33173017, at *4 (D.N.J. Nov. 16, 2000).  The conclusion that the Public Pension Funds have acted and will continue to act independently of their attorneys is bolstered by the sophistication of these funds and their respective experience supervising counsel's prosecution of complex litigation.  Indeed, OPERS and STRS Ohio are represented in this matter by the Ohio Attorney General, and there can be little question that the Attorney General is pursuing this matter – and electing to do so cooperatively with Texas TRS, PGGM and AP4 – because he believes it will benefit the class, and not at the direction of counsel.  Further, each of the Public Pension Funds has internal personnel that have and will continue to be responsible for prosecuting this case, conferring with each other and supervising counsel. Joint Declaration, Fox Decl. Exhibit L.   Because the Public Pension Funds are a small,

cohesive group of sophisticated public pension funds which have provided evidence of the manner in which they determined to work together and their plan for joint oversight of the prosecution of this litigation, their losses are properly aggregated for purposes of this motion.

### 3. The Public Pension Funds Are Sophisticated Institutional Investors that Satisfy the Requirements of Rule 23

The PSLRA provides that, in addition to possessing the largest financial interest, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *Albert Fadem Trust*, 239 F. Supp. 2d at 347; *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 294 (E.D.N.Y. 1998).

Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, "typicality and adequacy of representation are the only provisions [of Rule 23] relevant to the determination of lead plaintiff under the PSLRA." *Kaplan*, 240 F.R.D. at 94 (citation omitted) (alteration in original). Furthermore, "at this stage of litigation, only a preliminary showing of typicality and adequacy is required." *Id.* (citing *eSpeed, Inc.*, 232 F.R.D. at 102). As detailed below, the Public Pension Funds satisfy the typicality and adequacy requirements of Rule 23(a) and are qualified to be appointed as Lead Plaintiff.

14

a.   **The Claims of the Public Pension Funds Are Typical of the Claims of the Class**

The Public Pension Funds satisfy the typicality requirements of Rule 23. Typicality exists if "each class member's claim 'arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*, 08 MDL No. 1963, 2009 WL 50132, at *8 (S.D.N.Y. Jan. 5, 2009) (quoting *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992), *cert. dismissed sub nom.*, 506 U.S. 1088 (1993)). However, the claims of the Lead Plaintiff need not be identical to the claims of the class to satisfy typicality. *See id.; Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004). Courts have recognized that typicality exists if claims arise from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory. *See Drexel,* 960 F.2d at 291.

The claims of the Public Pension Funds are typical of the claims of class members. The claims of the Public Pension Funds arise out of material misstatements or omissions made by Bank of America concerning its acquisition of Merrill Lynch and the financial condition of both Merrill Lynch and Bank of America, as do the claims of the class in general. The Public Pension Funds and all class members therefore have identical, non-competing and non-conflicting interests in establishing defendants' liability. In sum, the Public Pension Funds satisfy the typicality requirement because, just like all other class members, they: (1) were entitled to vote at the December 5, 2008 shareholder meeting conducted pursuant to the Proxy Statement which contained materially misleading statements and omissions; (2) purchased or otherwise acquired Bank of America securities during the applicable period at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions; (3) purchased Bank of

15

America common stock pursuant to the Offering; and (4) suffered damages thereby. Thus, the claims of the Public Pension Funds are typical of those of other class members since their claims and the claims of other class members arise out of the same course of events.

**b.    The Public Pension Funds Will Fairly and Adequately Represent the Interests of the Class**

The Public Pension Funds will also fairly and adequately represent the class. The PSLRA directs the Court to limit its inquiry regarding adequacy to: (i) whether there are any conflicts between the interests of the movant and the members of the class; (ii) whether the movant is an adequate representative of the class; (iii) whether the interests of the movant are aligned with the members of the class; and (iv) whether there is evidence of any antagonism between the interests of the movant and the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). "The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Kaplan*, 240 F.R.D. at 94.

Here, the Public Pension Funds' interests are clearly aligned with the members of the class, and there is no evidence of any antagonism between the Public Pension Funds and the class. The Public Pension Funds' claims share numerous common questions of law and fact with those of the members of the class and their claims are, therefore, typical of the class. Joint Declaration, Fox Decl. Exhibit L.   Additionally, the Public Pension Funds have retained competent and experienced counsel who are able to conduct this complex litigation in a professional manner. Joint Declaration, Fox Decl. Exhibit L.   Moreover, the Public Pension Funds' experience prosecuting complex securities actions makes them ideal candidates to lead

16

the prosecution of this extremely important litigation.[7]   Furthermore, having suffered $273,501,188 in losses as a result of Bank of America's misstatements and omissions, the Public Pension Funds have a significant financial interest in the litigation and can be counted on to vigorously pursue recovery for the class from all culpable parties.  Thus, the close alignment of interests between the Public Pension Funds combined with their strong desire to prosecute the Related Actions on behalf of the class also militates in favor of granting the instant motion.

**c.**   **The Public Pension Funds Are the Prototypical Lead Plaintiff Envisioned by the PSLRA**

In addition to satisfying the preliminary requirements of Rule 23, the appointment of the Public Pension Funds as Lead Plaintiff also satisfies a critical legislative goal behind enacting the PSLRA – to encourage sophisticated institutions with large financial interests to serve as Lead Plaintiff in securities class actions. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001) (noting that the legislative intent of the PSLRA is to encourage large institutional investors to serve as lead plaintiff).

Indeed, the Public Pension Funds are all large pension funds with substantial assets and, as such, are precisely the type of institutional investors that Congress sought to summon and empower to serve as lead plaintiff when it enacted the PSLRA. *See Xianglin Shi v. Sina Corp.*, No. 05 Civ. 2154, 2005 WL 1561438, at *5 (S.D.N.Y. July 1, 2005) ("Because the size and

---

[7]       *See, e.g., Ohio Public Employees Retirement System v. Federal Home Loan Mortgage Corp., et al.*, No. 4:08-cv-00160 (N.D. Ohio Apr. 10, 2008), Fox Decl. Ex. M (appointing OPERS as lead plaintiff); *In re Merrill Lynch & Co. Sec., Derivative and ERISA Litig.*, No. 07-cv-9633 (S.D.N.Y. Mar. 12, 2008), Fox Decl. Ex. N (appointing STRS Ohio as lead plaintiff); *In re American Int'l Group, Inc. Sec. Litig.*, No. 04-cv-8141 (S.D.N.Y. Feb. 7, 2005), Fox Decl. Ex. O (appointing STRS Ohio and OPERS as lead plaintiffs); *In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261, 264 (D.D.C. 2005) (appointing STRS Ohio and OPERS as lead plaintiff); *Swedbank Robur Fonder AB, et al. v. Vivendi S.A., et al.*, No. 07-11092 (S.D.N.Y.) (AP4 prosecuting action asserting direct claims); *AFA Livforsakringsaktiebolag, et al., v. Merck & Co., et al.*, No. 07-4024 (D.N.J.)  (same).

17

experience of institutional investors can be of significant assistance to the prosecution of the action, a number of courts 'have understood [the PSLRA] to favor large institutional investors' as lead plaintiff.") (citation omitted) (alteration in original); *Ferrari v. Impath, Inc.*, No. 03-cv-5667, 2004 WL 1637053, at \*3 (S.D.N.Y. July 20, 2004) (stating that institutional investors are the type of lead plaintiff that Congress wanted to encourage to participate in securities litigation and to exercise control over the selection and actions of plaintiff's counsel); *see also Hevesi v. Citigroup Inc.*, 366 F.3d 70, 83 n.13 (2d Cir. 2004) (describing the main purpose of the PSLRA's lead plaintiff provision as "empower[ing] one or several investors with a major stake in the litigation to exercise control over the litigation as a whole"). The Public Pension Funds are among the largest public pension funds in the world and can zealously litigate this action and actively supervise Lead Counsel. STRS Ohio serves approximately 400,000 active, inactive and retired Ohio public educators and has billions of dollars in assets under management. OPERS serves more than 908,000 members and manages billions of dollars in assets. Texas TRS is the largest public retirement system in Texas. Texas TRS serves over 1.2 million participants and has billions of dollars in assets under management. PGGM is responsible for investing funds for the benefit of a Dutch pension fund focusing on the healthcare and welfare sector. PGGM is the second largest pension fund in Europe and manages billions of dollars in assets. AP4 is the Fourth Swedish National Pension Fund, one of the largest pension funds in Scandinavia. AP4 has approximately 4 million members and has billions of dollars in assets under management. The Public Pension Funds have collectively and individually demonstrated their advocacy for shareholders' rights and the promotion of corporate governance principles through their membership in numerous institutional investors organizations and their prior experience. Joint Declaration, Fox Decl. Exhibit L.

18

STRS Ohio and OPERS have experience serving as a Lead Plaintiff under the PSLRA, and Texas TRS has experience overseeing the prosecution of complex securities litigation and of actively monitoring securities class actions with respect to which it has an interest. In addition, PGGM and AP4 have experience moving for appointment as lead plaintiff or litigating actions under the federal securities laws. Each of the Public Pension Funds has sufficient incentive to vigorously prosecute the Related Actions and they understand the importance of having an engaged Lead Plaintiff monitor the litigation and supervise counsel. Thus, there is no question that the Public Pension Funds have the requisite experience and expertise to vigorously represent the class in prosecuting this litigation.

**B.      This Court Should Approve the Public Pension Funds' Choice of Lead Counsel**

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to this Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Courts should not disturb the Lead Plaintiff's choice of counsel unless necessary to "protect the interests of the plaintiff class." H.R. Conf. Rpt. No. 104-369, at 35, 104th Cong. 1st Sess. (Nov. 28, 1995).

The Public Pension Funds have retained the law firms of Kaplan Fox, Bernstein Litowitz and Barroway Topaz – counsel highly experienced in prosecuting securities class actions – to serve as Lead Counsel. Each of these firms has extensive experience litigating securities class actions and has successfully prosecuted numerous securities class actions on behalf of injured investors. Indeed, Kaplan Fox, Bernstein Litowitz and Barroway Topaz are among the nation's leading securities class action firms, having been appointed to serve as lead or co-lead counsel in courts in this District and around the country. Fox Decl. Ex. P (firm resume of Kaplan Fox), Ex. Q (firm resume of Bernstein Litowitz), Ex. R (firm resume of Barroway Topaz).

Accordingly, the Public Pension Funds' choice of experienced counsel should be appointed Lead Counsel.

**C.    This Court Should Consolidate the Related Actions**

Rule 42(a) of the Federal Rules of Civil Procedure permits the consolidation of actions that pose common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990); *Albert Fadem Trust*, 239 F. Supp. 2d at 347. Judicial economy generally favors consolidation and requires the court to conduct a careful inquiry that balances the prejudice and possible confusion that consolidation might entail against the waste of resources, the burden on the parties, and the risk of inconsistent judgments that separate proceedings would engender. *See Celotex*, 899 F.2d at 1285; *Albert Fadem Trust*, 239 F. Supp. 2d at 347. Under Rule 42(a), this Court has broad discretion to consolidate cases pending within its district. *See Celotex*, 899 F.2d at 1284-85. Consolidation is generally ordered so long as any confusion or prejudice does not outweigh efficiency concerns. *Id.*

It is also well-recognized that consolidating shareholder class action suits often benefits *both* the court and the parties by expediting pretrial proceedings, reducing case duplication and minimizing the expenditure of time and money by all persons concerned. *Olsten*, 3 F. Supp. 2d at 294; *see also* 15 U.S.C. § 78u-4(a)(3)(B) (providing that the court shall not make the lead plaintiff determination until it rules on whether to consolidate).

Consolidation of the following eleven actions pending in this District is appropriate in this litigation.

| | Name of Action | Civil No. | Date Filed |
|---|---|---|---|
| 1. | *Sklar v. Bank of America Corp., et al* | 09-cv-00580 | January 21, 2009 |
| 2. | *Finger Interests No. One LTD v. Bank of America Corp., et al* | 09-cv-00606 | January 22, 2009 |
| 3. | *Fort Worth Employees' Retirement Fund and City of Miami Gen. Employees' & Sanitation Employees' Retirement Trust v. Bank of America Corp., et al* | 09-cv-00638 | January 22, 2009 |
| 4. | *Wexler v. Bank of America Corp., et al* [8] | 09-cv-00720 | January 26, 2009 |
| 5. | *Palumbo v. Bank of America Corp, et al* | 09-cv-00740 | January 27, 2009 |
| 6. | *Zitner v. Bank of America Corp., et al* | 09-cv-00881 | January 30, 2009 |
| 7. | *Stabbert v. Bank of America Corp., et al* | 09-cv-00928 | February 2, 2009 |
| 8. | *Welikson v. Bank of America Corp., et al* | 09-cv-01463 | February 18, 2009 |
| 9. | *West Palm Beach Firefighters' Pension Fund v. Bank of America Corp., et al* | 09-cv-01612 | February 20, 2009 |
| 10. | *Fauerbach v. Bank of America Corp., et al* | 09-cv-01941 | March 3, 2009 |
| 11. | *Raphael v. Bank of America Corp., et al* | 09-cv-02350 | March 13, 2009 |

The Related Actions present virtually identical factual and legal issues, as they all arise out of Bank of America's misstatements and omissions during the Class Period. In each of the complaints in the Related Actions, plaintiffs seek to hold similar defendants responsible for the consequences of their course of conduct and seek relief under claims arising under the federal securities laws. Plaintiffs in each of the cases share a mutual interest in having the Court resolve questions concerning whether defendants made material misstatements and/or omitted material facts, and whether the price of Bank of America securities became artificially inflated as a result.

Because each of the actions pending before this Court presents related factual and legal issues, consolidation is appropriate.

---

[8]     The Plaintiff in *Wexler* filed a notice of voluntary dismissal on February 3, 2009.

21

## V.   CONCLUSION

For the above reasons, the Public Pension Funds respectfully request that the Court: (1) appoint the Public Pension Funds as the Lead Plaintiff in the Related Actions; (2) approve their choice of Lead Counsel; and (3) consolidate the Related Actions.

DATED: March 23, 2009
         New York, New York

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

By:_____ /s/ Frederic S. Fox_____ _____
Robert N. Kaplan
Frederic S. Fox
Donald R. Hall
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

**BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP**
Max W. Berger
Gerald H. Silk
1285 Avenue of the Americas, 38th Floor
New York, New York 10019
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

**BARROWAY TOPAZ KESSLER
MELTZER & CHECK LLP**
Sean M. Handler
Darren J. Check
Naumon A. Amjed
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

***Proposed Co-Lead Counsel for the Proposed
Lead Plaintiffs the Public Pension Funds and
the Proposed Class***

22

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 23, 2009, I caused to be electronically filed the foregoing paper with the Clerk of the Court using the ECF System which will electronically send notification of such filing to the registered participants and paper copies will be sent via first-class mail postage pre-paid to those indicated as non-registered participants on March 23, 2009.

/s/ Frederic S. Fox
Frederic S. Fox

March 23, 2009

23