UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

IN RE BANK OF AMERICA CORP.              :
SECURITIES, DERIVATIVE AND                        No. 09 MDL 2058 (DC)
EMPLOYMENT RETIREMENT INCOME             :
SECURITY ACT (ERISA) LITIGATION
                                         :
- - - - - - - - - - - - - - - - - -x

THIS DOCUMENT RELATES TO:                :          **OPINION**

- - - - - - - - - - - - - - - - - -x

STEVEN SKLAR,                            :

                    Plaintiff,           :          No. 09 Civ. 580 (DC)

          - against -                    :

BANK OF AMERICA CORP. et al.,            :

                    Defendants.          :

- - - - - - - - - - - - - - - - - -x

          AND RELATED CASES              :

- - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  06/30/09

**APPEARANCES:**          (See last page)


**CHIN, District Judge**

          Before this Court are thirty cases relating to the
merger of Bank of America Corporation ("BofA") with Merrill Lynch
& Co., Inc. ("Merrill Lynch") and public disclosures made in
connection with the transaction.  These putative class actions
include:  (1) actions based on alleged violations of the
securities laws, including Sections 10(b) and 14(a) of the
Securities Exchange Act of 1934 (the "Exchange Act") and Rules
10b-5 and 14a-9 thereunder, respectively (the "securities

actions");[1] (2) derivative actions alleging violations of common law fiduciary duties and Section 14 of the Exchange Act (the "derivative actions");[2] and (3) actions asserting claims under the Employee Retirement Income and Security Act ("ERISA") on behalf of participants in the BofA 401(k) plan that held investments in BofA stock (the "ERISA actions").[3]

Motions have been made pursuant to Rule 42(a) of the Federal Rules of Civil Procedure for the consolidation of the

---

[1]     The securities actions include: Sklar v. Bank of America Corp., No. 09 Civ. 580; Finger Interests Number One, Ltd. v. Bank of America Corp., No. 09 Civ. 606; Fort Worth Employees' Retirement Fund v. Bank of America Corp., No. 09 Civ. 638; Palumbo v. Bank of America Corp., No. 09 Civ. 740; Zitner v. Bank of America Corp., No. 09 Civ. 881; Stabbert v. Bank of America Corp., No. 09 Civ. 928; Welikson v. Bank of America Corp., No. 09 Civ. 1463; West Palm Beach Firefighters' Pension Fund v. Bank of America Corp., No. 09 Civ. 1612; Fauerbach v. Bank of America, No. 09 Civ. 1941; and Raphael v. Bank of America Corp., No. 09 Civ. 2350.  Two additional actions were transferred to this Court on June 10, 2009 for coordinated or consolidated pretrial proceedings by the Panel on Multidistrict Litigation:  Cromier v. Bank of America Corp., No. 09 Civ. 5410 and Bahnmaier v. Bank of America Corp., No. 09 Civ. 5411.  (See Transfer Order).

[2]     The derivative actions include: Louisiana Municipal Police Employees Retirement System v. Lewis, No. 09 Civ. 808; Waldman v. Lewis, No. 09 Civ. 834; Hollywood Police Officers' Retirement System v. Lewis, No. 09 Civ. 1174; Siegel v. Lewis, No. 09 Civ. 1331; Smith v. Lewis, No. 09 Civ. 1333; Lehmann v. Lewis, No. 09 Civ. 1434; Young v. Lewis, No. 09 Civ. 1561; Anderson v. Lewis, No. 09 Civ. 1572; West Palm Beach Firefighters Pension Fund v. Lewis, No. 09 Civ. 2581; and Westmoreland County Employee Retirement System v. Lewis, No. 09 Civ. 2609.

[3]     The ERISA actions include: Dailey v. Bank of America Corp., No. 09 Civ. 851; Wilson v. Bank of America Corp., No. 09 Civ. 880; Adams v. Bank of America Corp., No. 09 Civ. 914; Wright v. Bank of America Corp., No. 09 Civ. 1056; Stricker v. Bank of America Corp. Corporate Benefits Committee, No. 09 Civ. 1177; Gilliam v. Bank of America Corp., No. 09 Civ. 1606; Alvarez v. Bank of America Corp., No. 09 Civ. 2389; and Calibuso v. Bank of America Corp., No. 09 Civ. 2674.

- 2 -

cases into three consolidated actions:  securities actions; derivative actions; and ERISA actions.  Motions have also been made for the appointment of lead plaintiff and lead counsel in each of the three sets of actions, pursuant to 15 U.S.C. § 78u-4(a)(3)(B) and Fed. R. Civ. P. 23.

For the reasons set forth below, the securities actions are consolidated, the group known as the Public Pension Funds is appointed lead plaintiff in the securities actions, and its choice for lead counsel is approved.  The derivative actions are also consolidated, the group known as the Institutional Group is appointed interim lead plaintiff, and its attorneys Kahn Swick & Foti ("KSF")[1] and Saxena White P.A. ("Saxena White") are appointed interim co-lead counsel.  Finally, the ERISA actions are also consolidated and the law firms of Harwood Feffer LLP ("Harwood Feffer"), Squitieri & Fearon, LLP ("Squitieri & Fearon"), and Hagens Berman Sobol Shapiro LLP ("Hagens Berman") are appointed interim co-lead counsel.  All other motions pending before the Court related to these actions are denied.

BACKGROUND

## A.    The Facts

All the actions arise from BofA's recent merger with Merrill Lynch and allege the same core set of facts.

On September 15, 2008, BofA announced an agreement (the "Agreement") to merge with Merrill Lynch in a $50 billion all

---

[1]    Kahn Swick & Foti was formerly known as Kahn Gauthier & Swick, LLC.

stock transaction (the "Merger").  Discussions between BofA and
Merrill Lynch about the Merger had commenced only a short while
before the Agreement was announced.  The terms of the Merger were
set forth in a Joint Proxy Statement (the "Proxy Statement")
filed with the U.S. Securities and Exchange Commission (the
"SEC") on November 3, 2008, and mailed to all BofA shareholders
of record as of October 10, 2008.  The Proxy Statement
incorporated by reference documents filed by BofA and Merrill
Lynch with the SEC, including Quarterly Reports on Form 10-Q and
Current Reports on Form 8-K.  The Proxy Statement (and documents
incorporated by reference) are alleged to have understated,
concealed, or otherwise failed to disclose Merrill Lynch's true
financial condition.

        BofA shareholders approved the Merger following a vote
held December 5, 2008.  Pursuant to the terms of the Agreement,
Merrill Lynch shareholders would receive 0.8595 shares of BofA
stock for each of their shares, representing a value of
approximately $29 per Merrill Lynch share.  The transaction
closed on January 1, 2009.  Before the transaction closed,
however, BofA officers and directors are alleged to have learned
about Merrill Lynch's heavy 2008 losses and the deterioration of
its financial condition, but failed to disclose such information
or supplement or amend the Proxy Statement.  BofA and Merrill
Lynch officers and directors are also alleged to have paid
themselves substantial bonuses.  BofA required additional funding
and financial guarantees from federal government officials to
complete its acquisition of Merrill Lynch.

Facts regarding Merrill Lynch's dire financial
condition began to emerge in January 2009.  Following these
disclosures, the market price of BofA common stock fell to $5.10
per share as of January 20, 2009, a decline of 50 percent from
the prior week.

## B.    The Securities Actions

The securities actions assert two primary legal claims:
(1) violations of Section 14(a) of the Exchange Act, 15 U.S.C. §
78n(a), and (2) violations of Sections 10(b) of the Exchange Act,
15 U.S.C. § 78j(b).[5]

Plaintiffs' claims under Section 14(a) are brought on
behalf of persons who owned BofA shares on the October 10, 2008
record date and were entitled to vote on the Merger.  Plaintiffs
allege that the Proxy Statement setting forth the terms of the
Merger "contained material misrepresentations and omitted to
disclose true facts relevant to the Merger," including material
facts about Merrill's business, financial condition, and the
substantial risks associated with Merrill's assets.   (Sklar
Compl. ¶¶ 2, 49).

The Section 10(b) claims are brought on behalf of
persons who purchased or otherwise acquired BofA stock during the
alleged class period.  Plaintiffs allege that BofA and its
officers made false and/or misleading statements about the
financial health of BofA and Merrill, such that class members
paid artificially inflated prices for BofA common stock.

_____

[5]      Some actions allege claims under only Section 14(a) or
Section 10(b); others allege claims under both statutes.

C.   The Derivative Actions

        The derivative actions are brought under Federal Rule
of Civil Procedure 23.1 on behalf of BofA.  Some of them are also
brought derivatively on behalf of Merrill Lynch.  The actions
name BofA officers and directors as defendants; some also name as
defendants Merrill Lynch officers and directors and financial
services firms who provided advisory services related to the
merger.  Defendants are alleged to have breached their fiduciary
duties to their respective company and/or aided and abetted one
another in breaching their fiduciary duties.  Plaintiffs also
bring related common law claims for, inter alia, unjust
enrichment and waste of corporate assets, as well as claims under
Sections 14(a) and 10(b) of the Exchange Act.

D.   The ERISA Actions

        The ERISA actions are brought pursuant to Section 502
of ERISA, 29 U.S.C. § 1132, against fiduciaries of the BofA
401(k) Plan (the "Plan"), which covers all BofA and BofA
subsidiary employees.  Plaintiffs allege that the Plan's
fiduciaries invested in BofA common stock, even though they knew
or should have known that the financial health of BofA was at
serious risk due to its acquisition of Merrill Lynch and its
January 2008 acquisition of the fast-deteriorating Countrywide
Financial Corporation.  Plaintiffs bring claims for breach of
various fiduciary duties under ERISA Sections 404 and 405.

        Plaintiff Judy Calibuso also raises claims under
Sections 404 and 405 related to BofA's Pension Plan.  Pension

- 6 -

Plan benefits are based on a hypothetical account tied, in part,
to hypothetical "investment credits."  Participants determine how
to invest their hypothetical investment credits.  Calibuso
alleges that BofA has a conflict of interest with respect to the
Pension Plan because its funding obligation depends on
participants' selection of hypothetical investments.  She also
claims that Pension Plan fiduciaries have a "heightened duty" --
which they breached -- to ensure the Pension Plan offered
"prudent hypothetical investment options."  (Calibuso Compl. ¶¶
50-60).

**DISCUSSION**

### A.   Consolidation

Consolidation is appropriate where there are actions
involving "common question[s] of law or fact" pending before the
Court.  See Fed. R. Civ. P. 42(a).

Here, separate consolidation of the securities actions,
derivative actions, and ERISA actions is appropriate.  Defendants
and movant plaintiffs all seek consolidation, and no opposition
to consolidation has been received.  Within each of the three
sets of cases, the cases involve common questions of law and fact
sufficient to warrant consolidation. Judicial convenience and
economy will be promoted by consolidation; it will also avoid
unnecessary costs to the parties.  See Johnson v. Celotex Corp.,
899 F. 2d 1281, 1284-85 (2d Cir. 1990); In re Bear Stearns Cos.,
Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.,
No. 08 MDL 1963 (RWS), 2009 WL 50132, at *4 (S.D.N.Y. Jan. 5,

2009).  Though the different cases within each set of cases are
not identical, "[d]ifferences in causes of action, defendants, or
the class period do not render consolidation inappropriate if the
cases present sufficiently common questions of fact and law, and
the differences do not outweigh the interests of judicial economy
served by consolidation."  Kaplan v. Gelfond, 240 F.R.D. 88, 91
(S.D.N.Y. 2007).  Accordingly, the securities actions, the
derivative actions, and the ERISA actions will be consolidated
into three separately consolidated cases.  Future cases raising
common questions of law and fact filed in this Court or
transferred to this Court will also be consolidated into the
appropriate consolidated case.

## B.    Lead Plaintiff and Lead Counsel In The Securities Actions

### 1.    Applicable Law

The Private Securities Litigation Reform Act of 1995
(the "PSLRA") requires the court to appoint a "lead plaintiff" in
private securities class actions who is "the member or members of
the purported plaintiff class that the court determines to be
most capable of adequately representing the interests of class
members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  This provision of the
PSLRA was intended to ensure that parties with "significant
financial interests in the litigation" would oversee securities
class actions and control the management of such suits, including
the selection of counsel.  In re McDermott Int'l Sec. Litig., No.
08 Civ. 9943 (DC), 2009 WL 579502, at *1 (S.D.N.Y. Mar. 6, 2009).

- 8 -

Determination of the "most capable" class representative entails a two-step process.  First, the PSLRA sets forth a rebuttable presumption that "the most adequate plaintiff" is "the person or group of persons" who or that (a) has either filed the complaint or made a motion for appointment as lead plaintiff, (b) has "the largest financial interest in the relief sought by the class," and (c) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  In deciding which proposed lead plaintiff has "the largest financial interest in the relief sought by the class," courts consider four factors:  "(i) the gross number of shares purchased; (ii) the net number of shares purchased; (iii) the net funds spent; and (iv) the net loss."  In re McDermott Int'l, 2009 WL 579502, at *2; see also In re Initial Pub. Offering Sec. Litig., 214 F.R.D. 117, 121 (S.D.N.Y. 2002).

As for the requirements of Rule 23, at this stage a proposed lead plaintiff need only make a "preliminary showing" that it will satisfy the typicality and adequacy requirements of Rule 23.  Kaplan, 240 F.R.D. at 94; In re Initial Pub. Offering, 214 F.R.D. at 121.

Second, other members of the purported class may try to rebut the statutory presumption by showing that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class or is incapable of adequately representing the class because of "unique defenses."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The Court has the discretion to appoint more than one lead plaintiff and can aggregate the losses suffered by the members of a group of investors.  See Varghese v. China Shenghuo Pharm. Holdings, Inc., 589 F. Supp. 2d 388, 391-92 (S.D.N.Y. 2008) (discussing when courts have permitted group of investors to be appointed lead plaintiff).

   2.   **Application**

      a.   **Presumptive Lead Plaintiff**

         The following putative class members have timely moved for appointment as lead plaintiff:

         -- The California Public Employees' Retirement System and the California State Teachers' Retirement System (together, the "California Funds"); they are represented by Grant & Eisenhofer PA;

         -- The Central States, Southeast and Southwest Areas Pension Fund and the West Virginia Investment Management Board (together, the "Institutional Investor Group"); they are represented by Coughlin Stoia Geller Rudman & Robbins;

         -- The State Teachers Retirement System of Ohio, the Ohio Public Employees Retirement System, the Teachers Retirement System of Texas, Stichting Pensioenfonds Zorg en Wilzijn, represented by PGGM Vermongensbeheer B.V. and Fjarde AP-Fonden (together, the "Public Pension Funds"); they are represented by three law firms, Bernstein Litowitz Berger & Grossman LLP ("Bernstein Litowitz"), Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"), and Barroway Topaz Kessler Meltzer & Check LLP ("Barroway Topaz"); and

-- Finger Interests Number One, Ltd. ("Finger Interests"), represented by Susman Godfrey LLP.

Of the lead plaintiff movants, the Public Pension Funds have the largest financial interest.  Their interest is certainly greatest under the four objective factors commonly used by courts:  gross number of shares purchased, net number of shares purchased, net funds spent, and net loss.  The Public Pension Funds purchased a gross number of 20,734,391.75 BofA shares and a net number of 15,051,110.99 shares from July 21, 2008 to January 20, 2009, the longest class period identified.  (See Fox Decl. Exs. F, G, H, I, J).  They spent $259,745,374 and claim losses of approximately $273.5 million under the first-in, first-out ("FIFO") calculation method and $222.7 million under the last-in, first-out ("LIFO") calculation method.  (Id.).  The movants with the next-highest number of shares purchased are the California Funds, who purchased a gross number of 18,103,449 shares and a net number of 9,330,506 shares during the Class Period.  (See Levine Decl. Exs. B, C, D, E).  The California Funds' expenditures and losses are also smaller than the Public Pension Funds; they spent $149,273,141 and claim an approximately $260 million FIFO loss and an approximately $98.1 million LIFO loss.[6] (Id.).

In addition, the Public Pension Funds held around 34.4 million shares of BofA stock as of the October 10, 2008 record

---

[6]    The numbers are approximate as the California Funds reference different FIFO loss figures in their motion papers, all in the $260-269 million range.

date, and they held 31 million shares eligible to be voted on the merger.  (Supp. Fox Decl. Ex. A).  The number of shares held is another factor that may be considered in gauging the movants' financial interest in the Section 14(a) claims.  See Zucker v. Zoran Corp., No. 06 Civ. 4843 (WHA), 2006 WL 3591156 at *3 (N.D. Cal. Dec. 11, 2006).  Although the California Funds note that they held approximately four million more shares of BofA common stock as of the record date (Cal. Funds Reply at 7), the Public Pension Funds' holdings were still substantial and support the determination that they have the largest financial interest in the litigation.  Finger Interests, which seeks appointment as a niche lead plaintiff for the Section 14(a) plaintiffs only, owned only 1,064,711 BofA shares as of the record date.

At this stage of the litigation, the Public Pension Funds also "satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), as they have made a preliminary showing that they can meet the adequacy and typicality requirements of Rule 23.  Their claims "arise[] from the same course of events" and they make "similar legal arguments to prove the defendant[s'] liability" as the other putative class members.  In re Bear Stearns, 2009 WL 50132, at *8 (defining standard for typicality).  Like other putative members of the class, the Public Pension Funds were entitled to vote on the merger between BofA and Merrill Lynch, and they had purchased or otherwise acquired BofA securities at prices allegedly inflated by defendants' materially false and misleading

statements and/or omissions.  As a result their claims are
typical in that they allege material misstatements and/or
omissions made by defendants related to the merger, and they
share an interest in establishing defendants' liability and
achieving the maximum amount of recovery.  See also In re Drexel
Burnham Lambert Group, 960 F.2d 285, 291 (2d Cir. 1992) (the
availability of different sources of recovery for class members
does not destroy typicality); In re Bear Stearns, 2009 WL 50132,
at *8 (some factual differences will not destroy typicality "as
similarity of legal theory may control even in the face of
differences of fact").

          The Public Pension Funds also satisfy the adequacy
requirement, as they have the greatest financial interest in the
outcome of the case, their interests appear to be otherwise
aligned with those of the putative class, and they have retained
competent and experienced counsel.  See Kaplan, 240 F.R.D. at 94
("The adequacy requirement is satisfied where: (1) class counsel
is qualified, experienced, and generally able to conduct the
litigation; (2) there is no conflict between the proposed lead
plaintiff and the members of the class; and (3) the proposed lead
plaintiff has a sufficient interest in the outcome of the case to
ensure vigorous advocacy.").  Moreover, the group is comprised of
large public pension funds in the United States and Europe; they
are thus the type of sophisticated institutional investors
envisioned by Congress in the enactment of the PSLRA.  See
Ferrari v. Impath, Inc., No. 03 Civ. 5667 (DAB), 2004 WL 1637053,
at *3 (S.D.N.Y. July 20, 2004).

- 13 -

The California Funds and the Institutional Investors Fund argue that the Public Pension Funds are not a proper group of plaintiffs, claiming that the group is a lawyer-driven creation assembled to establish the largest financial interest in the litigation.  I disagree.  The Public Pension Funds have shown that they are able to "function cohesively and to effectively manage the litigation apart from their lawyers."  Varghese, 589 F. Supp. 2d at 392; see also Hevesi v. Citigroup Inc., 366 F.3d 70, 83 n.13 (2d Cir. 2003) ("[T]he role of the lead plaintiff is to empower investors so that they -- not their lawyers -- exercise primary control over private securities litigation.").  They have submitted declarations demonstrating cooperative efforts among the funds.  (See Fox Decl. Ex. L; Supp. Fox Decl. Ex. A).  Representatives from the different funds have discussed their decision to act jointly in the case and have made plans for joint oversight over the litigation and joint supervision of counsel, including implementing protocols for regular communication among members and with counsel.  (Id.).  The funds also each have internal personnel to represent them in the group and have met in person and on conference calls.  (Id.).  Such demonstrated cooperation among plaintiffs, particularly plaintiffs that are sophisticated institutional investors, satisfies concerns about designating groups as lead plaintiffs that are in fact dominated by counsel.  Cf. In re McDermott Int'l, 2009 WL 579502, at *5 (rejecting proposal to appoint co-lead plaintiffs because plaintiffs had not "provided the Court

with any evidence of their pre-litigation relationship, their
past cooperation, or any plans for future cooperation"); In re
Tarragon Corp. Sec. Litig., No. 07 Civ. 7972 (PKC), 2007 WL
4302732, at **1-2 (S.D.N.Y. Dec. 6, 2007) (rejecting groups
because there was "no showing that the members of either 'group'
have, in fact, functioned as a group"). Although the members of
the Public Pension Funds may not have functioned as a group in
the past, for purposes of this litigation, it is clear they have
functioned as a group and intend to continue to do so.

        Groups of plaintiffs are specifically permitted by the
PLSRA to be appointed lead plaintiff. 15 U.S.C. § 78u-
4(a)(3)(B)(i) (courts "shall appoint as lead plaintiff the member
or members of the purported plaintiff class that the court
determines to be most capable of adequately representing the
interests of class members") (emphasis added). Because they have
established their ability to act independent of counsel, the
Public Pension Funds are a proper group and are presumptive lead
plaintiffs.

### b.    Rebutting the Presumption

        The statutory presumption in favor of the Public
Pension Funds is not rebutted. None of the other movants for
appointment as lead plaintiff have shown that the Public Pension
Funds will not fairly and adequately protect the interests of the
class or that they, because of "unique defenses," are incapable
of adequately representing the class. 15 U.S.C. § 78u-
4(a)(3)(B)(iii)(II).

Finger Interests argues that the Public Pension Funds
and the other pension fund movants cannot adequately represent
the Section 14(a) shareholder class because they are former
Merrill Lynch shareholders who benefitted from the merger.  It
claims that the relief sought by pre-existing BofA shareholders
under Section 14(a) directly conflicts with the interests of the
Public Pension Fund and other members of the Section 10(b) class
because of their Merrill Lynch holdings.  (Finger Interests Opp'n
at 3-11).

Finger Interests' arguments are unavailing.  At this
early point in the litigation, its claim that an actual conflict
exists between plaintiffs in the putative Section 10(b) and
Section 14(a) classes remains speculative and premature.  While
the Public Pension Funds held shares in both BofA and Merrill
Lynch prior to the merger, their pre-existing BofA shares were
substantial -- nearly 35 million.  By contrast, they held only
around 8.8 million Merrill Lynch shares.  (Public Pension Funds
Reply Mem. at 5).  The Public Pension Funds therefore have an
enormous economic motivation to seek recovery on behalf of pre-
existing BofA shareholders on both the Section 10(b) and Section
14(a) claims.  See In re Elan Corp. Sec. Litig., No. 02 Civ. 865
(WKFM), 2002 WL 31720410, at **3-4 (S.D.N.Y. Dec. 3, 2002)
(rejecting motion for separate lead plaintiff to be appointed
where no clear conflict of interest existed).  The suggestion
that the Public Pension Funds, because of their Merrill Lynch
holdings, would have wanted the merger to go through regardless

- 16 -

of the harm that it might cause to their pre-existing BofA investments is speculative.  No actual conflict of interest has been shown that would rebut the statutory presumption in favor of appointing the Public Pension Funds as lead plaintiff.

Finger Interests' proposed appointment as niche plaintiff for the Section 14(a) class would add to the expense of the litigation, to the detriment of BofA shareholders, and is not warranted under the circumstances.  "[A] wide ranging analysis under Rule 23 is not appropriate at this stage of the litigation and should be left for consideration of a motion for class certification."  In Re Bear Stearns, 2009 WL 50132, at *8 (Jan. 5, 2009) (alterations in the original) (citation and internal quotation marks omitted).  Whether subclasses are necessary to advance the interests of pre-existing BofA shareholders who did not hold Merrill Lynch stock may be revisited then.  See In re Elan Corp., 2002 WL 31720410, at *4; see also Constance Sczesny Trust v. KPMG LLP, 223 F.R.D. 319, 325 (S.D.N.Y. 2004) (though lead plaintiff may face unique defenses, interests of different class members "not sufficiently differentiated to require the appointment of a 'niche' lead plaintiff at this time").

### c.   Lead Plaintiff's Selection of Counsel

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 87u-4(a)(3)(B)(iv). The Public Pension Funds have selected the law firms of Kaplan Fox, Bernstein Litowitz, and Barroway Topaz to serve as lead

- 17 -

counsel.  All three firms are highly experienced in prosecuting securities class actions.  Additionally, the firms indicate that they have implemented measures to limit legal fees and costs, including dividing labor among counsel for the sake of efficiency, requiring approval for significant expenses, and negotiating a competitive fee agreement with plaintiffs.  (Fox Decl. Ex. L; Supp. Fox Decl. Ex. A).  Accordingly, the Public Pension Funds' choice of counsel is approved.

## C.   Interim Lead Counsel In The Derivative and ERISA Actions

### 1.   Applicable Law

In complex cases, courts may appoint a plaintiff leadership structure to coordinate the prosecution of the litigation.  Fed. R. Civ. P. 23(g)(3) provides that courts "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."  Interim class counsel's role is to "fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(4).  While not statutorily required, the appointment of interim class counsel may be helpful in "clarify[ing] responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement."  Federal Judicial Center, Manual For Complex Litigation § 21.11 (4th ed. 2004); see also MacAlister v. Guterma, 263 F.2d 65, 68-69 (2d Cir. 1958) (benefits of appointing lead counsel include eliminating duplication and repetition).

In appointing interim class counsel, courts must appoint the applicant "best able to represent the interests of the class."  Fed. R. Civ. P. 23(g)(2).  Courts consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).  They may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  These include:  "(1) the quality of the pleadings; (2) the vigorousness of the prosecution of the lawsuits; and (3) the capabilities of counsel," In re Comverse Tech., Inc. Derivative Litig., No. 06 Civ. 1849 (NGG)(RER), 2006 WL 3761986, at **2-3 (S.D.N.Y. Sept. 22, 2006), as well as whether counsel "are qualified and responsible, . . . [whether] they will fairly and adequately represent all of the parties on their side, and . . . [whether] their charges will be reasonable."  In re Bear Stearns, 2009 WL 50132, at *11 (quoting Manual For Complex Litigation § 10.22).

## 2. Application

### a. Derivative Actions

The following putative plaintiffs have filed motions seeking appointment as lead derivative plaintiff and to have their counsel appointed lead counsel:

-- West Palm Beach Police Pension Fund, the Firemen's and Policemen's Pension and Relief Fund of the City of Tuscaloosa, and the Westmoreland County Employee Retirement System (together, the "Pension Funds") move for appointment as lead plaintiff and to have their counsel Scott + Scott LLP ("Scott + Scott") appointed as lead counsel; they are joined by plaintiff James F. Lehmann;

-- Edward Thomas Smith and Martin Siegel move for the appointment of Weiss & Lurie and The Brualdi Law Firm, P.C. ("The Brualdi Law Firm") as co-lead counsel; and

-- Louisiana Municipal Police Employees Retirement System ("LMPERS") and Hollywood Police Officers' Retirement System (together, the "Institutional Group") move for appointment as co-lead plaintiffs and to have their counsel KSF and Saxena White appointed as co-lead counsel.

After review of the factors and taking other considerations into account, I appoint the Institutional Group interim lead plaintiff and KSF and Saxena White interim co-lead counsel. As an initial matter, I note that all of the above law firms have demonstrated that they are experienced and qualified to serve as interim lead counsel. Each has experience handling complex litigation, including shareholder derivative suits, and has knowledge of the applicable law. The pleadings are also well-drafted and each firm has shown itself to be vigorous in its prosecution. My decision is based on the following.

First, the Institutional Group is comprised of two institutional investors who are well-suited to acting on behalf of the putative class prior to certification.  LMPERS is an experienced and active institutional litigant; it moreover has experience as a plaintiff in derivative actions on behalf of BofA and Merrill Lynch.  See Louisiana Mun. Police Employees Ret. Sys. v. Thain et al., No. 08 Civ. 7618 (PKC) (S.D.N.Y.); Louisiana Mun. Police Employees Ret. Sys. v. Lewis et al., No. 08 Civ. 4561 (N.D. Calif.).  Although the Pension Funds note that both actions were voluntarily dismissed after relatively little activity had occurred, this does not detract from LMPERS' experience and expertise.

Second, Saxena White has been involved as co-lead counsel in derivative litigation on behalf of Merrill Lynch.  See In re Merrill Lynch & Co., Inc. Sec., Derivative & ERISA Litig., Master File No. 07 Civ. 9633 (JSR) (DFE) (S.D.N.Y.).  Though the actions are not related, there may well be overlap enhancing Saxena White's capabilities to act as an effective representative for the class in this action.

Finally, a co-lead counsel structure is appropriate, as Saxena White and KSF will be able to share resources and expertise for the litigation of the case during the pre-certification stage.  Contrary to the Pension Funds' assertion, there is no preference for only one law firm to be appointed lead counsel in cases such as the current action, with many different defendants and complicated issues.  Rather, appointment of multiple counsel is routine and widely accepted.

The other movants advance different arguments in favor of their own appointment and against the appointment of KFS and Saxena White and the Institutional Group.  In general, however, the different movants' criticism of each others' claims and pleadings is unconvincing.  All of the derivative complaints include roughly the same allegations; each also contains unique factual allegations, legal theories, and claims.  I need not determine which complaints are superior to the others.  Many, if not all, deficiencies in the different complaints may be cured when the Institutional Group files a consolidated derivative complaint, and differences among the complaints can also be addressed at that time.

Accordingly, the Institutional Group is appointed interim lead plaintiff in the derivative actions and KSF and Saxena White are appointed interim class counsel.

**b.    ERISA Actions**

The following plaintiffs have filed motions seeking appointment as lead ERISA plaintiff and/or lead counsel:

- Vernon Dailey, Rhonda Wilson, and Mark Adams move to have Harwood Feffer, Squitieri & Fearon, and Hagens Berman appointed interim co-lead counsel;

- Margaret Stricker and Michael Andrews move for Andrews to be appointed lead plaintiff and to have Johnson Bottini, LLP appointed as interim class counsel with Murray, Frank & Sailer LLP as liaison counsel;

- Leo Gilliam moves for appointment as interim lead
plaintiff with Stanley Luboff and Robert E. Gaynor and to have
Stull, Stull & Brody appointed as interim lead counsel;

- Alma Alvarez and Kelly Weigel move for appointment as
interim lead plaintiff and to have Bailey & Glasser LLP and
Schneider Wallace Cottrell Brayton Konecky LLP appointed as
interim co-lead counsel; and

- Judy Calibuso moves for appointment as lead plaintiff
and to have Lewis, Feinberg, Lee, Renaker & Jackson, P.C. ("Lewis
Feinberg") and Lieff, Cabraser, Heimann & Bernstein, LLP ("Lieff
Cabraser") appointed interim co-lead counsel, with Lieff Cabraser
appointed as liaison counsel and Ferguson, Stein, Chambers,
Gresham & Sumter, P.A. ("Ferguson Stein") and Outten & Golden,
LLP ("Outten & Golden") appointed as additional counsel.

After review of the factors and taking other
considerations into account, I appoint Harwood Feffer, Squitieri
& Fearon, and Hagens Berman interim co-lead counsel, with no
designation of interim lead plaintiff.  Here, where all of the
movants for interim lead plaintiff are individual Plan
participants -- not active, experienced institutional litigants
like LMPERS in the derivative actions -- the rationale for
appointing an interim lead plaintiff is lacking.  Appointing
interim class counsel is sufficient to protect the interests of
the class during the pre-certification period.  Accordingly, I
focus on the candidates for lead and co-lead class counsel.

- 23 -

As with the derivative actions, all of the law firms in the ERISA actions have demonstrated their experience and qualifications to serve as interim lead counsel.  My decision is based on the following.

First, Harwood Feffer, Squitieri & Fearon, and Hagens Berman brought three of the eight ERISA claims.  In addition to Dailey, Wilson, and Adams, plaintiff Lesley Wright also concurs in the proposed leadership structure, creating consensus among plaintiffs in four of the eight ERISA actions filed.  (Berman, Harwood, Squitieri Joint Decl. ¶ 3).

Second, underscoring their ability to coordinate their activities and seek consensus, Harwood Feffer, Squitieri & Fearon, and Hagens Berman have already taken meaningful steps in the litigation to advance the interests of the putative class, including filing the first three complaints on behalf of Plan participants, obtaining Plan documents and requesting additional documents from BofA, interviewing and surveying class members, consulting with a financial expert about potential damages, communicating with defendants' counsel, and setting up a website with a description of the case and an invitation to Plan participants to register their interest in the case.  (Id. ¶¶ 12-16).  These actions not only demonstrate the firms' expertise, but also their ability to work cooperatively.

Last, both Harwood Feffer and Squitieri & Fearon are based in New York.  Hagens Berman is based in Seattle but has attorneys in New York, as well.

Other movants' arguments against the appointment of the
Harwood Feffer group are unavailing.  The involvement of three
law firms is appropriate for a class action of this complexity.
Additionally, the conflicts of interest identified by the other
movants remain speculative and hypothetical at this point.
Finally, although the different movants argue against the quality
of the Dailey, Adams, and Wilson complaints, the pleadings are
well-drafted and, as discussed above with the derivative actions,
any differences among the complaints may be addressed with the
filing of a consolidated complaint.

Accordingly, Harwood Feffer, Squitieri & Fearon, and
Hagens Berman are appointed interim co-lead counsel.

## CONCLUSION

For the reasons set forth above, the securities,
derivative, and ERISA actions are each separately consolidated.
Future cases raising common questions of law and fact filed in
this Court or transferred to this Court will also be consolidated
into the appropriate consolidated case.

The Public Pension Fund group is appointed lead
plaintiff in the securities actions, and its choice for lead
counsel is approved.  The Institutional Group is appointed
interim lead plaintiff in the derivative actions and KSF and
Saxena White are appointed interim co-lead counsel.  Harwood
Feffer, Squitieri & Fearon, and Hagens Berman are appointed
interim co-lead counsel in the ERISA actions.

- 25 -

Lead counsel for each set of plaintiffs shall submit a proposed consolidation order on notice within ten days hereof. The parties shall meet and confer within twenty days hereof to agree upon an initial case management order for submission to the Court, for its approval.  They shall appear at a pre-trial conference on July 29, 2009, at 10 a.m. in Courtroom 11A.

SO ORDERED.

Dated:     New York, New York
           June 30, 2009

DENNY CHIN
United States District Judge

- 26 -

## APPEARANCES

Attorneys for Plaintiff Sklar:

> WOLF POPPER LLP
>     By:  Lester L. Levy, Esq.
>          James A. Harrod, Esq.
>          Natalie M. Mackiel, Esq.
> 845 Third Avenue
> New York, New York  10022

Attorneys for Plaintiff Finger Interests Number One, Ltd.:

> SUSMAN GODFREY LLP
>     By:  Stephen D. Susman, Esq.
> 654 Madison Avenue, 5th Floor
> New York, New York  10065-8440
>
>     By:  Harry P. Susman, Esq.
>          Alexander Kaplan, Esq.
> 1000 Louisiana Street, Suite 5100
> Houston, Texas  77002-5096

Attorneys for Plaintiff Fort Worth Employees' Retirement Fund:

> BERNSTEIN, LITOWITZ, BERGER & GROSSMAN LLP
>     By:  Gerald H. Silk, Esq.
>          Salvatore J. Graziano, Esq.
>          Noam Mandel, Esq.
> 1285 Avenue of the Americas
> New York, New York  10019
>
> ABRAHAM, FRUCHTER & TWERSKY, LLP
>     By:  Jeffrey S. Abraham
> One Penn Plaza, Suite 2805
> New York, New York  10019

Attorneys for Plaintiff Palumbo:

> ZWERLING, SCHACHTER & ZWERLING, LLP
>     By:  Richard A. Speirs, Esq.
>          Stephanie E. Kirwan, Esq.
> 41 Madison Avenue
> New York, New York 10010
>
> CRIDEN & LOVE, P.A.
>     By:  Michael E. Criden, Esq.
> 7301 S.W. 57th Court, Suite 515
> South Miami, Florida  33143

Attorneys for Plaintiff Zitner:

        COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
            By:  Samuel H. Rudman, Esq.
               David A. Rosenfeld, Esq.
        58 South Service Road, Suite 200
        Melville, New York  11747

            By:  Patrick J. Coughlin, Esq.
               Darren J. Robbins, Esq.
               David C. Walton, Esq.
               Catherine J. Kowalewski, Esq.
        655 West Broadway, Suite 1900
        San Diego, California  92101

        HOLZER HOLZER & FISTEL, LLC
            By:  Michael I. Fistel, Jr., Esq.
               Marshall Pierce Dees, Esq.
        200 Ashford Center North, Suite 300
        Atlanta, Georgia  30338

Attorneys for Plaintiff Stabbert:

        MICHAEL A. JACOBS, ESQ.
        31 Lake Street, P.O. Box 159
        Stamford, New York  12167

Attorneys for Plaintiff Welikson:

        LAW OFFICE OF KENNETH A. ELAN
            By:  Kenneth A. Elan, Esq.
        217 Broadway, Suite 606
        New York, New York  10007

        LAW OFFICES OF BERNARD M. GROSS, P.C.
            By:  Deborah R. Gross, Esq.
                Robert P. Frutkin, Esq.
        100 Penn Square East, Suite 450
        Philadelphia, Pennsylvania  19107

Attorneys for Plaintiffs West Palm Beach Firefighters' Pension
Fund and Firemen's and Policemen's Pension and Relief Fund of
City of Tuscaloosa:

        SCOTT + SCOTT, LLP
            By:  Beth A. Kaswan, Esq.
               Joseph Gugliemo, Esq.
        29 West 57th Street, 14th Floor
        New York, New York  10019

```
                    DOYLE LOWTHER, LLP
                         By:  William J. Doyle II, Esq.
                              John A. Lowther IV, Esq.
                              James R. Hail, Esq.
                    9466 Black Mountain Road, Suite 210
                    San Diego, California  92126

Attorneys for Plaintiff Fauerbach:

                    MICHAEL A. JACOBS, ESQ.
                    31 Lake Street
                    P.O. Box 159
                    Stamford, New York  12167

Attorneys for Plaintiff Raphael:

                    LAW OFFICE OF KLARI NEUWELT
                         By:  Klari Neuwelt, Esq.
                    110 East 59th Street, 29th Floor
                    New York, New York  10022

Attorneys for Plaintiff Bahnmaier:

                    FEDERMAN & SHERWOOD
                         By:  William B. Federman, Esq.
                    10205 North Pennsylvania
                    Oklahoma City, Oklahoma  73120

Attorneys for Plaintiff Cromier and Culbertson:

                    COTCHETT PITRE & MCCARTHY
                         By:  Gerald S. Ohn, Esq.
                    840 Malcolm Road, Suite 200
                    Burlingame, California  94010

Attorneys for Plaintiff Louisiana Municipal Police Employees
Retirement System:

                    KAHN SWICK & FOTI LLC
                         By:  Lewis Kahn, Esq.
                              Albert M. Myers, Esq.
                              Kevin Oufnac, Esq.
                    650 Poydras Street, Suite 2150
                    New Orleans, Louisiana  70130

                         By:  Michael Swick, Esq.
                    12 East 41st Street, 12th Floor
                    New York, New York 10017
```

Attorneys for Plaintiff Waldman:

                ROY JACOBS & ASSOCIATES
                    By:  Roy L. Jacobs, Esq.
                60 East 42nd Street
                New York, New York  10165

                PASKOWITZ & ASSOCIATES
                    By:  Laurence D. Paskowitz, Esq.
                60 East 42nd Street
                New York, New York  10165

Attorneys for Plaintiff Hollywood Police Officers' Retirement
System:

                LAW OFFICES OF CURTIS V. TRINKO, LLP
                    By:  Curtis V. Trinko, Esq.
                         Wai K. Chan, Esq.
                16 West 46th Street, 7th Floor
                New York, New York  10036

                SAXENA WHITE P.A.
                    By:  Maya Saxena, Esq.
                         Joseph E. White III, Esq.
                         Christopher S. Jones, Esq.
                         Lester R. Hooker, Esq.
                2424 North Federal Highway, Suite 257
                Boca Raton, Florida  33431

Attorneys for Plaintiff Siegel:

                THE BRUALDI LAW FIRM, P.C.
                    By:  Richard B. Brualdi, Esq.
                         Sue Lee, Esq.
                29 Broadway, 24th Floor
                New York, New York  10006

Attorneys for Plaintiff Smith:

                WEISS & LURIE
                    By:  Joseph H. Weiss, Esq.
                         Moshe Balsam, Esq.
                         Jack I. Zwick, Esq.
                551 Fifth Avenue
                New York, New York  10176

Attorneys for Plaintiff Lehmann:

                SCOTT + SCOTT, LLP
                    By:  Joseph P. Guglielmo, Esq.
                         Beth Ann Kaswan, Esq.
                29 West 57th Street, 14th Floor
                New York, New York  10019

```
            By:  David R. Scott, Esq.
            108 Norwich Avenue
       P.O. Box 192
       Colchester, CT   06415

       DOYLE LOWTHER LLP
            By:  William J. Doyle II, Esq.
                 James R. Hail, Esq.
                 John A. Lowther, Esq.
       9466 Black Mountain Road, Suite 210
       San Diego, California   92126
```

Attorneys for Plaintiff Young:

```
       GARWIN GERSTEIN & FISHER LLP
            By:  Scott W. Fisher, Esq.
                 Kevin Landau, Esq.
       1501 Broadway, Suite 1416
       New York, New York   10036
```

Attorneys for Plaintiff Anderson:

```
       LAW OFFICE OF CHRISTOPHER J. GRAY
            By:  Christopher J. Gray, Esq.
       460 Park Avenue, 21st Floor
       New York, New York   10022

       LAW OFFICES OF NICHOLAS KOLUNCICH III, LLC
            By:  Nicholas Koluncich
       6501 Americas Parkway NE
       One Park Square, Suite 620
       Albuquerque, New Mexico   87110
```

Attorneys for Plaintiff West Palm Beach Firefighters Pension Fund:

```
       COUHGLIN STOIA GELLER RUDMAN & ROBBINS LLP
            By:  Samuel H. Rudman, Esq.
                 David A. Rosenfeld, Esq.
       58 South Service Road, Suite 200
       Melville, New York   11747

            By:  Darren J. Robbins, Esq.
                 David C. Walton, Esq.
                 Catherine J. Kowalewski, Esq.
       655 West Broadway, Suite 1900
       San Diego, California   92101-3301
```

Attorneys for Plaintiff Westmoreland County Employee Retirement
System:

                SCOTT + SCOTT, LLP
                    By:   Beth A. Kaswan, Esq.
                          Joseph Gugliemo, Esq.
                29 West 57th Street, 14th Floor
                New York, New York 10019

                DOYLE LOWTHER LLP
                    By:   William J. Doyle II, Esq.
                          John A. Lowther IV, Esq.
                          James R. Hail, Esq.
                9466 Black Mountain Road, Suite 210
                San Diego, California 92126

Attorneys for Plaintiff Dailey:

                HARWOOD FEFFER LLP
                    By:   Robert I. Harwood, Esq.
                          Peter W. Overs, Jr., Esq.
                488 Madison Avenue, 8th Floor
                New York, New York  10022

                MAJOR KAHN, LLC
                    By:   Major Kahn, Esq.
                20 Bellevue Street
                Weekhawken, New Jersey 07086

Attorneys for Plaintiff Wilson:

                SQUITIERI & FEARON, LLP
                    By:  Lee Squitieri, Esq.
                32 East 57th Street, 12th Floor
                New York, New York  10022

Attorneys for Plaintiff Adams:

                SCHOENGOLD SPORN LAITMAN & LOMETTI, P.C.
                    By:   Christopher Lometti, Esq.
                          Frank R. Schirripa, Esq.
                19 Fulton Street, Suite 406
                New York, New York  10038

                HAGENS BERMAN STOBOL SHAPIRO LLP
                    By:   Steve W. Berman, Esq.
                          Andrew M. Volk, Esq.
                          Nick Styant-Browne, Esq.
                1301 Fifth Avenue, Suite 2900
                Seattle, Washington  98101

Attorneys for Plaintiff Wright:

        GAINEY & MCKENNA
           By:  Thomas J. McKenna, Esq.
        295 Madison Avenue, 4th Floor
        New York, New York  10017

Attorneys for Plaintiff Stricker:

        MURRAY, FRANK & SAILER LLP
           By:  Brian P. Murray, Esq.
        275 Madison Avenue, Suite 801
        New York, New York 10016-1101

        JOHNSON BOTTINI, LLP
           By:  Francis A. Bottini, Jr., Esq.
                Frank J. Johnson, Esq.
                Brett M. Weaver, Esq.
                Albert Y. Chang, Esq.
        655 West Broadway, Suite 1400
        San Diego, California  92101

Attorneys for Plaintiff Gilliam:

        STULL, STULL & BRODY
           By:  Jules Brody, Esq.
                Edwin J. Mills, Esq.
                Michael J. Klein, Esq.
        6 East 45th Street
        New York, New York  10017

Attorneys for Plaintiff Alvarez:

        BAILEY & GLASSER LLP
           By:  Athanasios Basdekis, Esq.
                Brian A. Glasser, Esq.
                Michael L. Murphy, Esq.
        209 Capitol Street
        Charleston, West Virginia  25301

Attorneys for Plaintiff Calibuso:

        LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
           By:  Steven E. Fineman, Esq.
                Rachel Geman, Esq.
        250 Hudson Street, 8th Floor
        New York, New York  10013

Attorneys for Defendants:

WACHTELL, LIPTON, ROSEN & KATZ
      By:  Peter C. Hein, Esq.
           Eric M. Roth, Esq.
           Andrew Houston, Esq.
           Jonathan E. Goldin, Esq.
           Keola Robert Whittaker, Esq.
51 West 52nd Street
New York, New York  10019

DAVIS POLK & WARDWELL
      By:  Lawrence Portnoy, Esq.
           Charles S. Duggan, Esq.
           Douglas K. Yatter, Esq.
450 Lexington Avenue
New York, New York  10017

DEBEVOISE & PLIMPTON LLP
      By:  Gary W. Kubek, Esq.
919 Third Avenue
New York, New York  10022

DECHERT LLP
      By:  Andrew Levander, Esq.
           David Hoffner, Esq.
1095 Avenue of the Americas
New York, New York  10036

      By:  Jennie Boehm Krasner
P.O. Box 5218
Princeton, New Jersey  08540

CRAVATH, SWAINE & MOORE LLP
      By:  Robert D. Joffe, Esq.
           Richard W. Clary, Esq.
           Julie A. North, Esq.
825 Eighth Avenue
New York, New York  10019

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
      By:  Charles E. Davidow, Esq.
2001 K Street, N.W.
Washington, D.C.  20006-1047

      By:  Brad S. Karp, Esq.
1285 Avenue of the Americas
New York, New York  10019

SULLIVAN & CROMWELL LLP
      By:  Richard C. Pepperman II, Esq.
125 Broad Street
New York, New York  10004

- 34 -

```
                    SHEARMAN & STEARLING LLP
                         By:   Stuart Baskin, Esq.
                               Adam S. Hakki, Esq.
                               Herbert S. Washer, Esq.
                               Terence Gilroy, Esq.
                    599 Lexington Avenue
                    New York, New York  10022

Attorneys for Movants Institutional Investor Group:

                    COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
                    (see above)

Attorneys for Movants Public Pension Funds:

                    BARROWAY TOPAZ KESSLER MELTZER & CHECK LLP
                         By:   Sean M. Handler, Esq.
                    280 King of Prussia Road
                    Radnor, Pennsylvania  19087

                    KAPLAN FOX & KILSHEIMER LLP
                         By:   Donald R. Hall, Jr., Esq.
                               Frederic Scott Fox, Esq.
                               Robert N. Kaplan, Esq.
                    850 Third Avenue
                    14th Floor
                    New York, New York  10022

                    BERNSTEIN, LITOWITZ, BERGER & GROSSMAN LLP
                    (see above)

Attorneys for Movants California Funds:

                    GIRARD GIBBS LLP
                         By:   Jonathan K. Levine, Esq.
                    601 California Street, Suite 1400
                    San Francisco, California  94108

                    GRANT & EISENHOFER, P.A.
                         By:   Jay W. Eisenhofer
                    485 Lexington Avenue, 29th Floor
                    New York, New York 10007

Attorneys for Movants Finger Interests Number One, Ltd.:

                    SUSMAN GODFREY LLP
                    (see above)

Attorneys for Movants Pension Funds:

                    SCOTT + SCOTT LLP
                    (see above)
```

Attorneys for Movants Smith and Siegel:

        WEISS & LURIE
        (see above)

        THE BRUALDI LAW FIRM, P.C.
        (see above)

Attorneys for Movants the Institutional Group

        KAHN SWICK & FOTI LLC
        (see above)

        SAXENA WHITE P.A.
        (see above)

Attorneys for Movant Calibuso:

        LIEFF CABRASER HEIMANN & BERNSTEIN LLP
        (see above)

        LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
            By:  Jeffrey Lewis, Esq.
                Teresa Renaker, Esq.
                Margaret Hasselman, Esq.
        1330 Broadway, Suite 1800
        Oakland, California  94612

        FERGUSON, STEIN, CHAMBERS, GRESHAM & SUMTER, P.A.
            By:  Geraldine Sumter, Esq.
                C. Margaret Errington, Esq.
        741 Kenilworth Avenue, Suite 300
        Charlotte, North Carolina  28204

        OUTTEN & GOLDEN, LLP
            By:  Jack A. Raisner
        3 Park Avenue, 29th Floor
        New York, New York  10016

Attorneys for Movants Andrews and Stricker:

        MURRAY, FRANK & SAILER LLP
        (see above)

        JOHNSON BOTTINI, LLP
        (see above)

Attorneys for Movants Gilliam, Luboff, Gaynor:

        STULL, STULL & BRODY
        (see above)

Attorneys for Movant Alvarez:

        BAILEY & GLASSER LLP
        (see above)

        SCHNEIDER, WALLACE, COTTRELL, BRAYTON, KONECKY LLP
           By:  Todd N. Schneider, Esq.
                Mark T. Johnson, Esq.
        180 Montgomery Street, Suite 2000
        San Francisco, California 94104

           By:  Garrett W. Wotkyns, Esq.
        7702 E. Doubletree Ranch Road, Suite 300
        Scottsdale, Arizona  85258

Attorneys for Movants Dailey, Wilson, and Adams:

        HARWOOD FEFFER LLP
        (see above)

        SQUITIERI & FEARON, LLP
        (see above)

        HAGENS BERMAN SOBOL SHAPIRO LLP
        (see above)