UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

IN RE: BANK OF AMERICA CORP.
SECURITIES, DERIVATIVE, AND
EMPLOYEE RETIREMENT INCOME                    Master File No. 09 MD 2058 (PKC)
SECURITY ACT (ERISA) LITIGATION
-----------------------------------------------------------x        MEMORANDUM AND ORDER

THIS DOCUMENT RELATES TO:

CONSOLIDATED SECURITIES ACTION
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

   The named plaintiffs move for class certification and the appointment of class

representatives and class counsel pursuant to Rule 23, Fed. R. Civ. P.

   For the reasons explained, the motion is granted.

BACKGROUND

   Plaintiffs assert that the defendants made material misstatements and omissions

regarding the acquisition of Merrill, Lynch & Co., Inc. ("Merrill") by defendant Bank of

America Corporation ("BofA").  They bring claims pursuant to sections 10(b), 14(a) and 20(a) of

the Securities Exchange Act of 1934 (the "'34 Act"), 15 U.S.C. §§ 78j(b), 78n(a), 78t(a), and

regulations promulgated thereunder, 17 C.F.R. §§ 240.10b-5, 240.14a-9(a), and sections 11,

12(a)(2) and 15 of the Securities Act of 1933 (the "'33 Act"), 15 U.S.C. §§ 77k, 77*l*(a)(2), 77o.

The Court previously granted in part and denied in part the defendants' motions to dismiss.  See

In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig., 757 F. Supp. 2d 260 (S.D.N.Y. 2010); In

re Bank of Am. Corp. Sec., Deriv., & ERISA Litig., 2011 WL 3211472 (S.D.N.Y. July 29,

2011).  Among other things, the Court concluded that plaintiffs could pursue direct claims

asserting Section 14(a) liability, that the plaintiffs adequately alleged material misstatements as

to Merrill's employee bonuses and that the plaintiffs adequately alleged material omissions

concerning Merrill's losses in the fourth quarter of 2008. 757 F. Supp. 2d 291-93, 295-302, 303-07. Familiarity with the Court's previous opinions is assumed.

In an Order dated July 29, 2011, the Court directed that class discovery would conclude no later than October 3, 2011. (Docket # 406.) Plaintiffs now move to certify the following classes:

> (i) As to claims under Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), all persons and entities who held BoA common stock as of October 10, 2008, and were entitled to vote on the merger between BoA and Merrill, and were damaged thereby; and (ii) as to claims under Sections 10(b) and 20(a) of the Exchange Act, all persons and entities who purchased or otherwise acquired BoA common stock during the period from September 18, 2008 through January 21, 2009, inclusive, excluding shares of BoA common stock acquired by exchanging stock of Merrill for BoA stock through the merger between the two companies consummated on January 1, 2009, and were damaged thereby; and (iii) as to claims under Sections 10(b) and 20(a) of the Exchange Act, all persons and entities who purchased or otherwise acquired January 2011 call options of BoA from September 18, 2008 through January 21, 2009, inclusive, and were damaged thereby; and (iv) as to claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933, all persons and entities who purchased BoA common stock issued under the Registration Statement and Prospectus for the BoA common stock offering that occurred on or about October 7, 2008, and were damaged thereby. Excluded from the Class are Defendants, present or former executive officers of BoA and Merrill, present or former members of Merrill's and BoA's Board of Directors and their immediate family members (as defined in 17 C.F.R. § 229.404, Instructions).

(Notice of Motion, Docket # 478.)

Defendants contend that, in light of class discovery, plaintiffs cannot maintain these claims on a classwide basis because they have not established predominance under Rule 23(b)(3). They argue that certification should be denied because the Section 14(a) claim is meritless and because the plaintiffs cannot prove either materiality or shareholder reliance as to certain alleged misstatements and omissions. Defendants also challenge the plaintiffs' class

definitions as overbroad, and contend that Section 11 of the '33 Act requires individualized inquiries as to the proposed class members' share ownership.

Defendants' opposition extensively relies on the opinions of their expert, Professor Allan Ferrell. Defendants have submitted an expert report by Professor Ferrell. (Naftalis Dec. Ex. 4.) Plaintiffs have submitted an expert report by Chad Coffman, CFA and rebuttal reports by Coffman and Professor Stephen J. Choi. (Castaldo Dec. Exs. 1-2, 9.) Deposition transcripts of the three experts have been submitted to the Court. (Naftalis Dec. Exs. 7-9.)

RULE 23 STANDARD.

"In determining whether class certification is appropriate, a district court must first ascertain whether the claims meet the preconditions of Rule 23(a) of numerosity, commonality, typicality, and adequacy." Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 201-02 (2d Cir. 2008). A court "may then consider granting class certification where it 'finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" Id. at 202 (quoting Rule 23(b)(3)).

Certification of a class is proper "only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (internal quotation marks omitted); see also In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 42 (2d Cir. 2006) ("A district judge is to assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met . . . ."). The party moving to certify bears the burden of satisfying

Rule 23(a).  In re Literary Works in Elec. Databases Copyright Litig., 654 F.3d 242, 249 (2d Cir. 2011).

   "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim."  Wal-Mart, 131 S. Ct. at 2551; accord Teamsters Local 445, 546 F.3d at 202 (a district court makes factual determinations when there is "overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement.") (quotation marks omitted).  However, "in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement."  In re IPO, 471 F.3d at 41.  The Court has discretion on questions of class certification because "the district court is often in the best position to assess the propriety of the class and has the ability . . . to alter or modify the class, create subclasses, and decertify the class whenever warranted."  Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd., 262 F.3d 134, 139 (2d Cir. 2001).  Similarly, "district courts retain 'ample discretion' to limit discovery and 'the extent of the hearing' on Rule 23 issues 'in order to assure that a class certification motion does not become a pretext for a partial trial of the merits.'"  Teamsters Local 445, 546 F.3d at 204 (quoting In re IPO, 471 F.3d at 41).

DISCUSSION

  I.  PLAINTIFFS' '34 ACT CLAIMS SATISFY RULE 23(a).

   A.  Plaintiffs Have Established Numerosity.

   The numerosity requirement is satisfied when joinder is "impracticable."  Rule 23(a); see also Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993) (surveying numerosity requirements).  Plaintiffs need not set forth an exact class size to establish numerosity.  Id.

Numerosity may be presumed when a class consists of forty or more plaintiffs.  Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).

   "In securities fraud class actions relating to publicly owned and nationally listed corporations, 'the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period.'"  Teachers' Ret. Sys. of Louisiana v. ACLN Ltd., 2004 WL 2997957, at *3 (S.D.N.Y. Dec. 27, 2004) (quoting Garfinkel v. Memory Metals, Inc., 695 F. Supp. 1397, 1401 (D. Conn. 1988)).  Courts have certified classes based on the volume of outstanding shares.  See, e.g., In re Globalstar Sec. Litig., 2004 WL 2754674, at *3 (S.D.N.Y. Dec. 1, 2004) (108,746,069 shares); In re Nortel Networks Corp. Sec. Litig., 2003 WL 22077464, at *2 (S.D.N.Y. Sept. 8, 2003) (estimating "hundreds or thousands" of possible class members based on defendant's 3 billion outstanding shares); In re Frontier Ins. Grp., Inc. Sec. Litig., 172 F.R.D. 31, 40 (E.D.N.Y.1997) ("[c]ommon sense suggests" that 13 million shares of outstanding common stock makes joinder impracticable).

   Plaintiffs have set forth evidence that BofA had between 4.6 billion and 6.4 billion outstanding shares of common stock during the class period, with an average daily trading volume of 133,640,000 shares.  (Castaldo Dec. Ex. 2 ¶¶ 26, 60.)  As to plaintiffs' '34 Act claims, defendants do not challenge these figures or dispute that plaintiffs have established numerosity. I conclude that the numerosity requirement of Rule 23(a)(1) is satisfied.

   B.  Plaintiffs Have Established Commonality.

   "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact."  Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury.  This does not mean merely that they have suffered a violation of the same

provision of law." Wal-Mart, 131 S. Ct. at 2551 (internal quotation omitted); see also Public

Emps. Ret. Sys. of Mississippi v. Merrill Lynch & Co., Inc., 277 F.R.D. 97, 105-06 (S.D.N.Y.

2011) ('33 Act claims alleging misstatements satisfy Wal-Mart's requirements of common injury

and facts).  "The commonality requirement has been applied permissively in securities fraud

litigation.  In general, where putative class members have been injured by similar material

misrepresentations and omissions, the commonality requirement is satisfied." Fogarazzao v.

Lehman Bros., Inc., 232 F.R.D. 176, 180 (S.D.N.Y. 2005).

Because they are based on the same alleged misstatements and omissions,

plaintiffs' '34 Act claims implicate common injuries and common facts.  The commonality

requirement of Rule 23(a)(2) is satisfied.

C.  Plaintiffs Have Established Typicality.

Rule 23(a)(3) requires that class representatives have claims typical of those

shared by the class members.  "To establish typicality under Rule 23(a)(3), the party seeking

certification must show that 'each class member's claim arises from the same course of events

and each class member makes similar legal arguments to prove the defendant's liability.'" In re

Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009) (quoting Robidoux, 987

F.2d at 936).  In a securities class action, when "plaintiffs will necessarily seek to develop facts

relating to . . . the dissemination of allegedly false or misleading statements underlying their

claims," the claims and nature of evidence "are generally considered sufficient to satisfy the

typicality requirement." In re Vivendi Universal, S.A., 242 F.R.D. 76, 85 (S.D.N.Y. 2007).

The proposed class representatives are the State Teachers Retirement System of

Ohio, the Ohio Public Employees Retirement System, the Teacher Retirement System of Texas,

Stichting Pensioenfonds Zorg en Welzijn, represented by PGGM Vermogensbeheer B.V., Fjärde

AP-Fonden, and Grant Mitchell.  (See Notice of Motion, Docket # 478.)  As with the proposed

class members, the class plaintiffs assert that they acquired BofA securities at prices allegedly

inflated by defendants' misstatements and/or omissions, and have an interest in maximizing their

recovery.  Plaintiffs have established that their claims are typical of those shared by the class.

The typicality requirement of Rule 23(a)(3) is satisfied.

> D.  Plaintiffs Have Established Adequacy.

The adequacy of representation inquiry under Rule 23(a) considers "whether: 1)

plaintiff's interests are antagonistic to the interests of other members of the class and 2)

plaintiff's attorneys are qualified, experienced and able to conduct litigation."  Baffa v.

Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000).  The adequacy and

typicality prongs of Rule 23(a) are "often overlapping . . . ."  In re Flag Telecom 574 F.3d at 31.

"The focus is on uncovering 'conflicts of interest between named parties and the class they seek

to represent.'"  Id. at 35 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997)).

The conflict must be "genuine."  In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291

(2d Cir. 1992); see also In re Literary Works, 654 F.3d at 249 (conflict "must be

'fundamental.'").

As discussed with respect to the typicality requirement, the interests of the

proposed class representatives are not antagonistic to the interests of the proposed class

members.  Defendants do not contend otherwise.  Separately, plaintiffs have retained

experienced and qualified counsel who have, to date, ably conducted this litigation.  (Castaldo

Dec. Exs. 4-6.)  The plaintiffs have satisfied the adequacy requirement.

E.  The Proposed Class Is Ascertainable.

Courts have also found an implied requirement of ascertainability to the express requirements set forth in Rule 23(a).  See In re Sadia, S.A. Sec. Litig., 269 F.R.D. 298, 305 (S.D.N.Y. 2010) (citing In re IPO, 471 F.3d at 30). "An identifiable class exists if its members can be ascertained by reference to objective criteria."  In re Fosamax Prods. Liab. Litig., 248 F.R.D. 389, 395 (S.D.N.Y. 2008) (quoting In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 209 F.R.D. 323, 337 (S.D.N.Y. 2002)).  Whether a potential class member purchased BofA stock during the Class Period and thereby suffered damages can be determined via objective criteria. Thus, members of the class are ascertainable.

II.  PLAINTIFFS' '34 ACT CLAIMS SATISFY RULE 23(b)(3).

Rule 23(b)(3) "requires the party seeking certification to show that 'questions of law or fact common to class members predominate over any questions affecting only individual members' and that class treatment would be superior to individual litigation."  Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010) (quoting Rule 23(b)(3)).  The "predominance requirement tests whether a proposed class is sufficiently cohesive to warrant adjudication by representation."  In re Salomon Analyst Metromedia Litig., 544 F.3d 474, 480 (2d Cir. 2008). It "ensures that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 104 (2d Cir. 2007) (ellipsis in original; quoting Amchem, 521 U.S. at 615).  "Therefore the requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more

8

substantial than the issues subject only to individualized proof.'"  Myers, 624 F.3d at 547

(quoting Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002)).

>A. Defendants' Merits-Based Arguments as to Section 14(a) Go Far Beyond Rule 23 Considerations.

The defendants argue that the plaintiffs have "failed to show" a cognizable claim

under Section 14(a), and that the motion for class certification should therefore be denied.

Relying on McLaughlin v. American Tobacco Co., 522 F.3d 215, 228-30 (2d Cir. 2008), and In

re Flag Telecom, 574 F.3d at 39-40, they contend that the plaintiffs' Section 14(a) claim is

meritless and that, as a consequence, a class should not be certified.  For the reasons explained,

defendants' argument goes well beyond McLaughlin and In re Flag Telecom, and does not defeat

plaintiffs' motion for certification.

Defendants are, of course, correct that the merits of a case may overlap with a

Rule 23 analysis.  See, e.g., Wal-Mart, 131 S. Ct. at 2551.  But class certification "is

emphatically not an opportunity for a second round of review, at a higher standard no less, of the

substantive merits of plaintiffs' underlying claims."  DeMarco v. Robertson Stephens Inc., 228

F.R.D. 468, 476 (S.D.N.Y. 2005) (Lynch, J.); accord Teamsters Local 445, 546 F.3d at 204

(courts must "assure that a class certification motion does not become a pretext for a partial trial

on the merits.") (quotation marks omitted).  "The only question" at class certification "is whether

[plaintiffs] may pursue those claims on behalf of a class of similarly situated persons, or whether

they must do so as individuals."[1]  DeMarco, 228 F.R.D. at 476.

---

[1] The defendants correctly note that In re IPO, 471 F.3d at 35 n.5, observed that DeMarco applied an overly lenient evidentiary standard that required only "some showing" that Rule 23 was satisfied, as opposed to requiring proof by a preponderance of the evidence.  In re IPO did not, however, conclude that a full merits analysis independent of Rule 23 is appropriate at the class certification stage: it expressly stated the opposite.  In re IPO, 471 F.3d at 41 ("[A] district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement . . . .").

In essence, the defendants seek to reargue the Court's prior conclusion that direct Section 14(a) claims may be brought against the defendants, with the qualification that no double recovery is permitted on either the derivative claims or the Section 10(b) claims.  See 757 F. Supp. at 291-93.  The Court requested letter briefs explaining the parties' theories as to whether there was possible conflict between direct and derivative recovery under Section 14(a).  Id. at 291.  The Court concluded that at the pleading stage, there plausibly may be distinct, non-overlapping grounds for both direct and derivative recovery:

> [T]he value of that corporation's stock may decrease because the corporation was damaged by an action that would not have been approved by fully-informed shareholders.  But the value of that corporation's shares also may decrease once a corrective disclosure issues.  That decrease is not necessarily co-extensive with injury to the corporation.  Therefore, material omissions from a proxy statement could directly injure the corporation as well as the corporation's shareholders.

Id. at 292.  As previously discussed, id. at 289-93, several authorities have recognized that shareholders may bring direct claims under Section 14(a), and that transaction causation is satisfied when a misleading proxy is "the essential link" in shareholders approving a corporate action.  See, e.g., Mills v. Electric Auto-Lite Co., 396 U.S. 375, 385 (1970); Koppel v. 4987 Corp., 167 F.3d 125, 137 (2d Cir. 1999); In re McKesson HBOC, Inc. Sec. Litig., 126 F. Supp. 2d 1248, 1266, 1269 (N.D. Cal. 2000) (upholding Section 14(a) claim brought by acquiring company's shareholders).

Defendants rely heavily on McLaughlin, 522 F.3d at 228-30, which denied class certification for plaintiffs' RICO claims because damages "cannot be shown by common evidence because they constitute an inherently individual inquiry . . . ."  The McLaughlin plaintiffs' injuries varied individually because they turned on each plaintiff's purchasing response to hypothetical variations in cigarette labeling.  Id. at 228.  "Thus, on the issue of out-

of-pocket loss, individual questions predominate; plaintiffs cannot meet their burden of showing that injury is amenable to common proof."  Id.  The Second Circuit rejected plaintiffs' recovery theories as non-cognizable under RICO, a conclusion that was necessary to determine whether plaintiffs' losses could be determined on a classwide basis.  Id. at 228-30.  In re Flag Telecom, 574 F.3d at 39-40, similarly weighed whether one subset of the proposed class could "even conceivably" prove loss causation, and thus whether the class representative satisfied the adequacy and typicality requirements of Rule 23(a).

        Defendants also assert that BofA shareholders had varying expectations as to the value of the Merrill acquisition, thereby requiring "an individualized inquiry into each class member's state of mind . . . ."  (Opp. Mem. at 7.)  The allegation here, however, is that the defendants misled plaintiffs by making false statements in proxy materials.  No individualized inquiry is required to determine whether the proxy materials ran afoul of Section 14(a).  As the Supreme Court observed in the Section 10(b) context, "'it is hard to imagine that there ever is a buyer or seller who does not rely on market integrity.  Who would knowingly roll the dice in a crooked crap game?'"  Basic Inc. v. Levinson, 485 U.S. 224, 246-47 (1988) (quoting Schlanger v. Four-Phase Sys. Inc., 555 F. Supp. 535, 538 (S.D.N.Y. 1982) (Breiant, J.)); see also United Paperworkers Int'l Union v. Int'l Paper Co., 985 F.2d 1190, 1197-98 (2d Cir. 1993) (the SEC "promulgated Rule 14a–9 with the goal of preserving for all shareholders who are entitled to vote, not just for those who sponsor proposals, the right to make decisions based on information that is not false or misleading.").  The issue of whether the proxy materials misled and damaged shareholders does not require individualized state-of-mind inquiries defeating predominance.

B.   Defendants Have Not Rebutted the Applicable Reliance Presumptions and Thus Have Not Defeated Plaintiffs' Showing of Rule 23(b)(3) Predominance.

1.   Defendants Have Not Rebutted the *Basic* Presumption.

Defendants argue that plaintiffs cannot establish predominance under Rule 23(b)(3) for their Section 10(b) claim asserting misstatements as to Merrill's employee bonuses. According to the defendants, the investing public was aware of Merrill's bonuses, and reports of the bonuses' existence did not cause a statistically significant drop in BofA share prices.  For the reasons explained, the defendants have not defeated the rebuttable presumption of reliance set forth by Basic, 485 U.S. at 247, and predominance is satisfied for plaintiffs' Section 10(b) claims directed toward the Merrill bonus payments.

There is a rebuttable presumption of shareholder reliance when defendants issue materially misleading statements in an efficient securities market.  Id. at 247.  Basic observed that "common sense," "probability" and "[r]ecent empirical studies" support a conclusion that "well-developed markets reflect all publicly available information, and, hence, any material misrepresentations."  Id. at 246.  "Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b-5 action."  Id. at 247; see also Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 552 U.S. 148, 159 (2008) ("[U]nder the fraud-on-the-market doctrine, reliance is presumed when the statements at issue become public.").

At the class certification stage, a plaintiff is entitled to the Basic presumption – thereby proving reliance and predominance – if it establishes by a preponderance of the evidence that "a defendant has (1) publicly made (2) a material misrepresentation (3) about stock traded on an impersonal, well-developed (i.e., efficient) market . . . ."  In re Salomon, 544 F.3d at 481. "[T]he burden of showing that there was no price impact is properly placed on defendants at the

rebuttal stage." Id. at 483. The defendants must "sever[ ] the link" between the share price and any alleged misrepresentation. Id. at 484 (emphasis omitted). The Basic presumption, "if unrebutted, thus allows plaintiffs to satisfy the element of reliance in securities fraud claims under the 1934 Act." Hevesi v. Citigroup Inc., 366 F.3d 70, 77 (2d Cir. 2004); see also In re Salomon, 544 F.3d at 485 ("[A] successful rebuttal defeats certification by defeating the Rule 23(b)(3) predominance requirement.") (emphasis in original).

Defendants rely on In re IPO, which concluded that if the plaintiffs in a securities fraud action cannot as a group prove reliance on the defendants' alleged misstatements, they fail to satisfy the predominance requirement of Rule 23(b)(3). 471 F.3d at 42-43. In re IPO concluded that the market for shares in initial public offerings was not efficient or fully developed and that plaintiffs had therefore failed to prove predominance. Id. at 42-43. The Second Circuit noted that initial public offerings are subject to a 25-day quiet period during which "analysts cannot report concerning securities in an IPO," in contrast to the free flow of information in an efficient market. Id. (citing 17 C.F.R. §§ 230.174(d), 242.101(b)(1).) In re IPO also observed that, pursuant to the allegations in that case, plaintiffs alleged that the market was slow to correct allegedly inflated share prices despite "widespread knowledge" of defendants' alleged market manipulation scheme. Id. at 43. This was described as "the very antithesis of an efficient market." Id.

Defendants contend that plaintiffs are not entitled to the Basic presumption as to Merrill's employee bonuses because there was no statistically significant drop in share price due to press reports of the Merrill bonuses. They separately contend that information about Merrill's bonuses was already known to the market and was incorporated into BofA's share price prior to the alleged corrective disclosures.

13

The record supports plaintiffs' contention that the alleged misrepresentations were material and that BofA securities traded on a well developed market.  On the night of January 21, 2009, the press reported that Merrill was accelerating bonus payments and had already paid $3-4 billion in bonuses.  (Naftalis Dec. Ex. 53.)  On January 22, the next trading day, BofA share values fell twelve percent, a figure that plaintiffs' expert states was statistically significant.  (Naftalis Dec. Ex. 5 ¶ 35.)  Defendants' expert also characterizes the price decline of January 22 as statistically significant.  (Naftalis Dec. Ex. 4 at 22 ("Of the five purported corrective disclosure dates, only January 15, 2009 and January 22, 2009 are statistically significant.").  In his deposition, defendants' expert testified, "I have not done the necessary research to pin down what in fact caused the statistically significant price impact, if it is not randomness on the 22nd. I ended with the point the purported corrective disclosure could not have been the cause." (Singer Dec. Ex. 1 at 217.)  The market's reaction to the alleged corrective disclosures provides some evidence of the alleged misstatements' materiality.  See In re SLM Corp. Sec. Litig., 2012 WL 209095, at *6 (S.D.N.Y. Jan. 24, 2012) ("While not required at the class certification stage, evidence of a stock price movement following corrective disclosures may be a relevant factor in the legal assessment of materiality.").

Defendants argue that even if the January 22 decline was in fact statistically significant, it could not be linked to the January 21 press report about Merrill's bonuses because the market was already aware of the bonuses.  As discussed in the Memorandum and Order of August 27, 2010, "[a]ssuming the truth of the Securities Complaint, the Joint Proxy and the Merger Agreement portrayed bonus payments to Merrill employees as a contingent event, when, in reality, the parties had reached agreement as to the timing and range of bonuses."  757 F. Supp. 2d at 298.  The Court also concluded that certain press reports in October 2008 about

14

Merrill's possible bonuses, which appeared in "outlets such as CNN, Bloomberg News, The New York Times, NBC and Fox News," did not, at the pleading stage, establish a truth-on-the-market defense, because the defendants failed to establish as a matter of law "whether the cited articles speak to the Merrill bonuses with 'a degree of intensity and credibility' that effectively counterbalances language in the Merger Agreement and Joint Proxy." Id. at 300, 302 (quoting Ganino v. Citizens Utilities Co., 228 F.3d 154, 167 (2d Cir. 2000) (collecting cases)); see also United Paperworkers, 985 F.2d at 1199 (upholding denial of defendants' summary judgment motion because "sporadic news reports" contradicting proxy solicitation materials did not provide shareholders with notice of allegedly misleading statements). Moreover, the press reports cited by defendants included language that qualified the likelihood of Merrill bonuses. (Naftalis Dec. Exs. 35-37.) At this stage, the record offered by defendants reflects the same infirmities.

      Based on the record before me, this Court concludes that the defendants have not overcome the Basic presumption as to alleged misstatements concerning the Merrill bonus arrangement. The record shows that BofA experienced a statistically significant decline in share value when the Merrill bonuses first became public. While the defendants' expert acknowledges that BofA shares experienced a statistically significant decline on January 22, he does not offer an explanation for the decline, except to assert that it was not due to disclosure of the bonuses. Finally, the hallmarks of an inefficient securities market as discussed by In re IPO, 471 F.3d at 42-43, are not present here: the record does not show that BofA share prices were slow to react to events or that there were limitations on public discussion about BofA.

      The Basic presumption therefore applies, and the plaintiffs have established predominance as to their Section 10(b) claims directed toward the Merrill bonuses.

2.  Defendants Have Not Rebutted the *Affiliated Ute* Presumption as to Merrill's Losses in the Fourth Quarter of 2008.

Defendants also argue that plaintiffs do not satisfy Rule 23(b)(3) because they cannot establish reliance on the alleged omissions concerning Merrill's losses in the fourth quarter of 2008.  This Court has previously discussed the circumstances surrounding Merrill's fourth-quarter losses.  See, e.g., 757 F. Supp. 2d at 283-84, 303-07; 2011 WL 3211472, at *3-10.

In bringing a securities fraud claim, "positive proof of reliance is not a prerequisite to recovery," provided than the omissions are "material in the sense that a reasonable investor might have considered them important in the making of [a] decision." Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153-54 (1972).  "[O]nce the plaintiff establishes the materiality of the omission . . . the burden shifts to the defendant to establish . . . that the plaintiff did not rely on the omission in making the investment decision." duPont v. Brady, 828 F.2d 75, 76 (1987).  Hence, "a defendant can avoid liability under Rule 10b-5 for nondisclosure of material information by proving by a preponderance of the evidence that disclosure of that information would not have altered the plaintiff's investment decision." Id. at 78.

According to the defendants, plaintiffs cannot prove the materiality of any alleged omissions, asserting that Merrill's losses already were known to the market and factored into BofA's share price.  They contend that the Affiliated Ute presumption does not apply because a reasonable investor would not have relied on the omission of Merrill's fourth-quarter losses.

Specifically, defendants cite a December 7, 2008 report authored by Betsy Graseck, who they describe as "a respected and widely followed independent research analyst at Morgan Stanley . . . ."  (Opp. Mem. at 28.)  The Graseck report stated, among other things, that a "$2.1B write-down on other loan exposures" plus "$8.9B from [mark to market] of investment

16

bank exposures" had "already been reflected in [BofA's] share price."  (Naftalis Dec. Ex. 75.)

Graseck testified at deposition that her figures were drawn from information contained in

Merrill's public filings.  (Naftalis Dec. Ex. 19 at 66-94.)  According to defendants' expert, these

losses were already factored into the BofA share price because the shares "did not exhibit a

statistically significant price reaction to [the] news" in the Graseck report.  (Naftalis Dec. Ex. 4

at 26.)  Defendants note that plaintiffs' expert testified that on the trading day after Graseck

issued the report, BofA shares materially rose in price.  (Naftalis Dec. Ex. 9 at 218.)  At least

four of the five lead plaintiffs received the Graseck report.  (Naftalis Dec. Exs. 76-79.)  Graseck

testified that at the time, she typically sent her reports to between 600 and 1,200 recipients, many

of them institutional investors.  (Naftalis Dec. Ex. 19 at 30.)

    While the Graseck report may ultimately have offered a prescient analysis of

Merrill's fourth quarter losses, its conclusions do not rebut the <u>Affiliated Ute</u> presumption and

"prov[e] by a preponderance of the evidence that disclosure of that information would not have

altered the plaintiff's investment decision."  <u>duPont</u>, 828 F.2d at 78.  Moreover, the Graseck

report was not based on the value of Merrill's actual assets, which were not publicly disclosed,

but upon a comparison of Merrill's general assets against a generic index known as the ABX

index.  As explained in the Graseck report, "[o]ur estimated write-downs are based on 3Q08

write-downs relative to the relevant index's performance."  (Naftalis Dec. Ex 75 at 2.)  It

acknowledged that the methodology "isn't perfect," but that "the indices are the best indicator of

asset class declines in the absence of detailed information on the banks' portfolios."  (Naftalis

Dec. Ex. 75 at 2.)

    Numerous analysts also reached conclusions that varied from Graseck's.  Both

company insiders and outside analysts uttered contemporaneous statements that Merrill's losses

exceeded expectations.  On a conference call about fourth quarter earnings, BofA CEO Kenneth

Lewis stated that there was a "much, much higher deterioration" of Merrill assets "than we had

expected, going into the fourth quarter," and that "most anybody in the capital markets business

would have forecasted a lower loss rate than what we saw, so it wasn't an issue of not identifying

the assets."  (Naftalis Dec. Ex. 5 ¶ 18.)  Lewis subsequently stated that Merrill's losses

"shocked" the market and that "the magnitude of the loss, obviously, at Merrill Lynch really

stunned people.  And so it was a bad day, and it did shock a lot of people and disappoint a lot of

people."  (Castaldo Dec. Ex. 1 ¶ 25.)  After BofA announced Merrill's results, the Fitch and

Moody's ratings agencies downgraded BofA's credit rating.  (Castaldo Dec. Ex. 1 ¶ 23 & n.12.)

Analysts variously described Merrill's fourth-quarter losses as "much, much worse than

expected" (Goldman Sachs), $12.3 billion more than anticipated (Sandler O'Neill and Partners),

"much greater than the market or the company anticipated" (Friedman, Billings, Ramsey & Co.,

Inc.), and "much larger than anticipated" and "very disappointing" (Citigroup).  (Castaldo Dec.

Ex. 1 ¶ 23.)  As defendants' expert stated at deposition:

> I think that an important analytical point here is, it is true that there
> were some analysts and some market commentators that were
> more positive than others.  So Morgan Stanley on December 7th
> had a substantial write-down that they estimated.  And there was
> other analysts that had lower write-down estimates as of that time.
>
> So there is heterogeneity.  There is a dispersion across analysts of a
> view.  I agree that there were analysts that were positive as of
> October or even November on Merrill Lynch.  That's consistent
> with the view that there was information, there were market
> participants that were discussing substantial losses in the fourth
> quarter.

(Singer Dec. Ex. 1 at 81-82.)  When asked about rating agency perceptions of Merrill's risk and

balance sheet, defendants' expert stated, "I'm not going to provide expert testimony on

subjective beliefs.  I view it as a fact issue and not appropriate subject for expert testimony."

(Singer Dec. Ex. 1 at 139.)

On January 15, 2009, the press first reported that BofA would receive government

funding under the Troubled Asset Relief Program in order to complete the Merrill acquisition,

and cited unquantified losses at Merrill.  (Castaldo Dec. Ex. 1 ¶ 17.)  On the next morning,

January 16, 2009, BofA announced before the market opened that Merrill's after-tax losses for

the fourth quarter totaled more than $15 billion and more than $21 billion before taxes.

(Castaldo Dec. Ex. 1 ¶ 18.)  According to plaintiffs' expert, on January 15 and 16, 2009, BofA

shares experienced statistically significant losses (Naftalis Dec. Ex. 5 ¶ 20), a conclusion shared

by defendants' expert as to the price drop of January 15.  (Naftalis Dec. Ex. 4 at 22.)

As reflected in the record, analysts had a range of expectations as to Merrill's

fourth-quarter performance.  Defendants' expert acknowledged as much in deposition.  (Singer

Dec. Ex. 1 at 81-82.)  Statements by both BofA insiders and outside analysts reflected surprise at

the extent of Merrill's loss.  Moreover, plaintiffs' report states that BofA shares experienced

statistically significant losses on January 15 and 16, 2009, a conclusion that the defendants'

expert shares as to January 15.  For the purposes of this motion, the plaintiffs have established

materiality and reliance and defendants have not rebutted the Affiliated Ute presumption.

3.   Plaintiffs Have Established Superiority.

In addition to predominance, Rule 23(b)(3) requires a court to find that "a class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy."  Factors relevant to determining superiority include:

> (A) the class members' interests in individually controlling the
> prosecution or defense of separate actions; (B) the extent and
> nature of any litigation concerning the controversy already begun
> by or against class members; (C) the desirability or undesirability

of concentrating the litigation of the claims in the particular forum;
(D) the likely difficulties in managing a class action.

Rule 23(b)(3)(A)-(D).  These factors are "nonexhaustive."  <u>Amchem</u>, 521 U.S. at 615.

A class action is superior to other alternative methods of adjudicating this controversy.  Certain of the class members' claims will be too small to pursue individually.  Given the potential class size and the likelihood that individual recovery for some class members may be relatively modest, class certification is appropriate.  Litigating each claim individually would likely result in wasteful and repetitive lawsuits, thus ineffectively utilizing the resources of the judiciary and the parties.  The existence of multiple lawsuits would also threaten disparity and inconsistent outcomes.  Moreover, I do not foresee any atypical difficulties in the management of this class action or discern any reason why this District is not the proper forum for this action.

III. PLAINTIFFS' '33 ACT CLAIMS SATISFY RULE 23(a) AND 23(b)(3).

In discussing the certification of plaintiffs' proposed '33 Act class, I incorporate the foregoing authorities and standards.  For reasons of clarity and because the defendants have raised arguments unique to the proposed '33 Act class, I separately address the motion to certify the '33 Act class.

A.  <u>Plaintiffs Have Established Numerosity.</u>

Plaintiffs assert that BofA's October 7, 2008 offering of 455 million shares of BofA common stock violated the '33 Act by misstating material information related to the Merrill bonuses.  Defendants argue that the plaintiffs have failed to demonstrate numerosity as to the proposed class by not identifying the number of purchasers in the October 7 offering.  (Opp. Mem. at 37-38.)  They also cite an absence of proof as to how many purchasers in the offering continued to hold those shares until the disclosure of the Merrill bonuses.  Given the number of

shares in the offering, however, the class would likely number in the thousands.  See, e.g., In re PE Corp. Sec. Litig., 228 F.R.D. 102, 107 (D. Conn. 2005) (Droney, J.) (numerosity satisfied because, "although [named plaintiffs] cannot identify the exact number of purported class members, given that almost 4 million shares of stock were sold in the secondary offering, the class could number in the thousands."); In re WorldCom, Inc. Sec. Litig., 219 F.R.D. 267, 280 (S.D.N.Y. 2003) (Cote, J.) (numerosity satisfied when defendant issued "billions of shares and billions of dollars of debt securities during the Class Period . . . .").  I conclude that plaintiffs have satisfied the numerosity requirement.

        B.   Plaintiffs Have Established Commonality.

Because the '33 Act claims are based on the same alleged misstatements concerning Merrill's bonus payments, I conclude that commonality is satisfied.

        C.   Plaintiffs Have Established Typicality.

As the named plaintiffs' claims are directed toward alleged misstatements as to Merrill's bonus payments, I conclude that they are typical of the class.  The typicality requirement of Rule 23(a)(3) is satisfied.

        D.   Plaintiffs Have Established Adequacy.

I am satisfied that the interests of the proposed class representatives are not antagonistic to the interests of the proposed class members.  Adequacy is satisfied.

        E.   The Proposed Class Is Ascertainable.

Whether a potential class member purchased BofA shares in the offering and held those shares until the corrective disclosure can be determined via objective criteria.  Thus, members of the class are ascertainable.

21

F.   Under Plaintiffs' Proposed Definition, the Section 11 Claim Does Not Appear
to Raise Individualized Tracing Problems.

Plaintiffs' proposed class for its Section 11 claims consists of "all persons and entities who purchased BoA common stock issued under the Registration Statement and Prospectus for the BoA common stock offering that occurred on or about October 7, 2008, and were damaged thereby."  (Notice of Motion, Docket # 478.)  Defendants assert that the plaintiffs cannot satisfy predominance because of the complexities of tracing which BofA shares were issued under the October 7 registration statement and which were not.  They contend that shares issued in the offering were thereafter traded in the public markets alongside other BofA shares, and that the complications of tracing the shares to the registration statement would require individualized inquiries for each class member, thereby defeating the predominance requirement of Rule 23(b)(3).

Section 11 of the '33 Act expressly provides for a private right of action when "any part of a registration statement . . . contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading . . . ."  15 U.S.C. § 77k(a).  DeMaria v. Andersen, 318 F.3d 170, 175-78 (2d Cir. 2003), discussed the tracing requirement of Section 11, concluding that a purchaser could assert Section 11 liability even if shares were acquired on the secondary market and not directly from the issuer, provided that the security was issued under the allegedly flawed registration statement.  "This understanding of the statutory text conforms with the long-standing practice in this circuit of permitting suit under § 11 by those who can 'trace' their shares to the allegedly defective registration statement."  Id. (collecting cases).  In DeMaria, tracing shares to the registration statement was relatively straightforward: there had been only one stock offering, meaning that "any person who acquires the security may sue under § 11, 'regardless of whether

he bought in the initial offering, a week later, or a month after that.'"  Id. (quoting Hertzberg v.

Dignity Partners, Inc., 191 F.3d 1076, 1080 (9th Cir. 1999)).

       In other circumstances, where shares issued under an allegedly defective

registration statement are publicly traded alongside shares already in the secondary market from

prior offerings, tracing is considerably more complicated.   "'Tracing may be established either

through proof of a direct chain of title from the original offering to the [plaintiff] . . . or through

proof that the [plaintiff] bought her shares in a market containing only shares issued pursuant to

the allegedly defective registration statement.'"  In re IPO, 471 F.3d at 31 n.1 (alterations and

ellipsis in original; quoting In re Initial Public Offering Sec. Litig., 227 F.R.D. 65, 117-18

(S.D.N.Y. 2004)).

       Plaintiffs have not meaningfully addressed this line of authority.  Their reply

memorandum addresses the issue in one sentence, stating: "There are no 'tracing' issues because

Plaintiffs seek to certify a Securities Act class of purchasers of BofA stock issued 'under' the

offering documents, not 'traceable' to those documents."  (Reply Mem. at 28.)  This statement is

consistent with the text of the proposed class definition, which is limited to shareholders who

purchased shares "issued under the Registration Statement and Prospectus . . . ."  (Notice of

Motion, Docket # 478.)  By this, I understand the proposed Section 11 class to be limited to

shareholders who directly purchased shares in the October 7 offering, and as excluding those

shareholders who subsequently acquired shares in the secondary market.  This proposed

definition would appear to avoid the tracing problems that necessitate individualized inquiries

and defeat the predominance requirement of Rule 23(b)(3).  Because individualized tracing

inquires will not arise under the proposed class definition, I conclude that common questions of

law and fact predominate, and that the motion to certify the Section 11 class is granted.

G.  The Alleged Misstatements Concerning Merrill's Bonuses Can Be Pursued on a Classwide Basis.

For the reasons previously discussed, plaintiffs have, for the purposes of class certification, established the materiality of any alleged misstatements concerning Merrill's bonus payments.  This applies to the '33 Act claims.

In addition, plaintiffs do not seek relief under the '33 Act as to any alleged omissions concerning Merrill's fourth-quarter losses.  Therefore, I need not consider defendants' arguments as to why these losses would not be recoverable on behalf of a '33 Act class.

IV.  THE PROPOSED CLASS DEFINITIONS ARE NOT OVERBROAD.

A.  Plaintiffs' Section 10(b) Class Definition Is Not Overbroad.

Plaintiffs' proposed shareholder class for their Section 10(b) claim consists of "all persons and entities who purchased or otherwise acquired BoA common stock during the period from September 18, 2008 through January 21, 2009 . . . ."  (Notice of Motion, Docket # 478.) On September 18, 2008, BofA filed the Merger Agreement with the SEC.  Plaintiffs allege that the Merger Agreement was misleading because, contrary to representations contained therein, Merrill and BofA had reached an undisclosed agreement as to the payment of bonuses to Merrill employees.  See 757 F. Supp. 2d at 295-300.  The bonus agreement was memorialized in writing but not disclosed to shareholders.  Id.  At 2 a.m. on January 22, 2009, the Financial Times reported that Merrill paid between $3 billion and $4 billion in bonuses.  (Naftalis Dec. Ex. 53.)

Defendants argue that a class consisting of purchasers from September 18 to January 21 is overbroad.  They contend that the class period should begin no earlier than November 12, 2008, noting that the Court previously cited that date as "pivotal."  (Opp. Mem. at 42.)  The Court's discussion of November 12, 2008 was specific to the scienter allegations

24

against BofA CFO Joe L. Price and his knowledge about Merrill's losses, however.  See 2011 WL 3211472, at *5.

Defendants also argue that the class should exclude any person who sold BofA shares before January 15, 2009, which, as discussed, was the date when the press first reported significant but then-unquantified losses at Merrill and the date on which the parties' experts agree that BofA experienced a statistically significant decline in share price.  According to the plaintiffs, the first corrections to BofA share prices began on Sunday, January 11, 2009, when a Citigroup analyst publicly forecast significant losses for Merrill, causing the BofA share price to decline by 12 percent on the next trading day.  (Compl. ¶ 176; Reply Br. at 28 ("the first corrective disclosure occurred on January 11, 2009 . . . .")  Under the plaintiffs' own theory of liability, BofA shareholders who sold prior to January 11, 2009 were not injured.  Plaintiffs expressly state that they "do not seek to include 'in-and-out' traders (i.e., people who sold before January 11, 2009), in the Class, as the Class definition includes only those investors who were 'damaged' by the alleged misstatements."  (Reply Br. at 29.)

I therefore conclude that plaintiffs' Section 10(b) class definition is not overbroad, and that it excludes BofA shareholders who sold BofA shares prior to January 11, 2009.

### B.   The Proposed Section 14(a) Class Is Not Overbroad.

Defendants assert that plaintiffs' proposed Section 14(a) class definition is overbroad because it includes BofA shareholders who also held Merrill shares prior to the acquisition's closing.  They assert that the "purportedly inflated price" of Merrill shares offset any losses incurred by BofA shareholders as a result of the allegedly misleading proxy materials.  (Opp. Mem. at 42-43.)  According to the defendants, as of December 31, 2008, approximately

25

24% of BofA shares were held by institutional investors who had "substantial cross-ownership" of Merrill shares.  (Opp. Mem. at 42 n.40.)

       "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues."  In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 139 (2d Cir. 2001), overruled on other grounds by In re IPO, 371 F.3d 24.  "[T]he fact that a defense 'may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones.'"  Id. (quoting Waste Mgmt. Holdings, Inc. v. Mowbray, 203 F.3d 288, 296 (1st Cir. 2000)).  In surveying authority as to individualized damages in a fraud-on-the-market context – specifically, whether the damages of proposed class members may have been mitigated by their own short selling – Judge Cote concluded that "[w]hen liability can be determined on a class-wide basis, individualized damage issues are not ordinarily a bar to class certification."  In re WorldCom, 219 F.R.D. at 302 (collecting cases).  Finally, the authority cited by defendants goes toward the methodology for calculating offset damages and not to issues of class certification.  See, e.g., Abrahamson v. Fleschner, 568 F.2d 862, 878-79 (2d Cir. 1977) (remanding with guidance as to calculating damages offsets); Byrnes v. Faulkner, Dawkins and Sullivan, 550 F.2d 1303, 1313-14 (2d Cir. 1977) (discussing damages offset for individual's counterclaims).

       The possibility that certain proposed class members may have held Merrill shares and therefore benefited from BofA's acquisition of Merrill does not require a narrowing of the proposed Section 14(a) class definition.  The ultimate issue of whether certain plaintiffs' losses are to be offset by any purported inflation of Merrill share prices need not be resolved at this time.

V.  THE  PROPOSED CLASS OF JANUARY 11 CALL OPTIONS PURCHASERS IS
     CERTIFIED.

Defendants argue that the plaintiffs' proposed class of January 2011 call options

purchasers should not be certified because the plaintiffs 1.) have not shown numerosity, 2.) are

not entitled to the Basic presumption of reliance, and 3.) the proposed class is overbroad.

As of January 21, 2009, the final day of the class period, there were 58,696

outstanding call option contracts with an expiration date of January 22, 2011.  (Singer Reply

Dec. Ex. 13.)  I conclude that this satisfies the numerosity requirement.  See, e.g., In re Arakis

Energy Corp. Sec. Litig., 1999 WL 1021819, at *5 (E.D.N.Y. Apr. 27, 1999) (numerosity

satisfied by existence of 111,375 call option contracts).

For the reasons previously explained, I conclude that, for the purposes of this

motion, BofA securities traded in an efficient market.  Defendants have not rebutted the Basic

presumption.  Moreover, the supporting authority cited by defendants, In re American

International Group, Inc. Securities Litigation, 265 F.R.D. 157, 168-69 (S.D.N.Y. 2010),

concluded that a proposed lead plaintiff satisfied the typicality requirement of Rule 23(a)(3).  It

does not address the Basic presumption, except to later note that it was not met when plaintiffs

had not "even pled" that certain defendants had made misstatements or omissions.  Id. at 175.

Lastly, defendants argue that named plaintiff Grant Mitchell purchased only one

series of January 11 call options – CUSIP VBAA20 – and that he therefore can bring claims

solely on behalf of holders of CUSIP VBAA20 series January 22, 2011 call options.  This Court

previously concluded that Mitchell "may assert a claim on behalf of holders of January 2011 call

options, but not any other category of call option."  2011 WL 3211472, at *14.  Surveying

authority in this Circuit, the Court concluded that the named plaintiffs had standing to bring

classwide claims only if they suffered injuries common to the class, and that Mitchell could not

27

bring claims on behalf of holders of call options that he did not, himself, own.  Id. at *12-14.  In

arguing that the proposed class definition is "overbroad" by including "all persons and entities

who purchased or otherwise acquired January 2011 call options," I do not understand the

defendants to question Mitchell's standing to pursue these claims.  Defendants do not challenge

the class breadth on Rule 23(a) or 23(b)(3) grounds.  At this stage, it appears that Mitchell

suffered an alleged common injury with other holders of January 22, 2011 call options.  The

Court is unable to find any authority limiting a class to a particularized series of call options, as

opposed to call options with a common expiration date.

I therefore conclude that the proposed class of holders of January 22, 2011 call

options is appropriate.

### VI. APPOINTMENT OF CLASS COUNSEL.

Defendants do not oppose plaintiffs' motion to appoint Bernstein Litowitz Berger

& Grossman LLP, Kaplan Fox & Kilsheimer LLP and Kessler Topaz Meltzer & Check, LLP as

class counsel.  (Notice of Motion, Docket # 478.)  As noted by then-District Judge Chin, to

whom this case was previously assigned, "[a]ll three firms are highly experienced in prosecuting

securities class actions."  In re Bank of America Corp. Sec., Derivative & ERISA Litig., 258

F.R.D. 260, 271 (S.D.N.Y. 2009) (appointing above-named firms as lead counsel pursuant to the

PSLRA, 15 U.S.C. § 78u–4(a)(3)(B)(iv)).  Based on my review of the firms' resumes (Castaldo

Dec. Exs. 4-6) and the conduct of the litigation to date, I conclude that counsel satisfy Rule

23(g), and the motion is granted.

### VII. THIS COURT RETAINS THE AUTHORITY TO REVISE OR DECERTIFY THE CLASS.

Finally, I note that "[a]n order that grants or denies class certification may be

altered or amended before final judgment."  Rule 23(c)(1)(C); accord Cordes & Co., 502 F.3d at

104 n.9 (a district court "can always alter, or indeed revoke, class certification at any time before final judgment is entered . . . ."); Sumitomo Copper. Litig., 262 F.3d at 139 (noting "longstanding view" that a district court has authority "to alter or modify the class, create subclasses, and decertify the class whenever warranted."); In re Visa Check/MasterMoney, 280 F.3d at 141 ("There are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including: (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.").  This Court will exercise its authority to revisit class certification if so warranted by further developments.

CONCLUSION

Plaintiffs' motion to certify the proposed classes is GRANTED.

Class counsel shall submit the proposed notice to the class by close of business on February 17, 2012.

The Clerk is directed to terminate the motion.  (Docket # 478.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       February 6, 2012